# REDD vs. St. Francis County.

This court has jurisdiction, on appeal from the Circuit Court, of a cause originating in the County Court, on the petition of a land owner to reduce and correct the assessment of his lands.

The 4th section of the act of 1853, (Acts of 1853, page 73,) prescribing the mode of assessing the lands of non-residents, is not in conflict with Article 4, section 2, of the Constitution of the United States, nor of the compact entered into between this State, upon its admission into the Union, and the United States, which forbids non-resident proprietors to be taxed higher than residents.

This court will not set aside the assessment of lands made by three house-holders of the vicinage under oath, upon the testimony of witnesses who swear merely as to the value of the lands, generally, in the same township.

*Appeal from St. Francis County.*

Hon. George W. Beazley, Circuit Judge.

Palmer and Watkins & Gallagher, for the appellant.

Jordan, Attorney General, for the appellee.

Mr. Justice Hanly delivered the opinion of the Court.

This was a case commenced in the County Court of St. Francis county, founded on a petition filed in that court by the appellant, setting up that he was not a resident or inhabitant of the county of St. Francis, but was the owner therein of a large body of lands, which were taxed and assessed to him for the year 1855, at the rate and price of $10 per acre ; averring that the actual and intrinsic value of such lands did not exceed the price and sum of three dollars per acre. The petition also states, that the mode and manner pursued by the assessor for said county in the assessment of said lands for said year, was by having the same appraised and valued by three house-holders of the elective township, with-

in which said lands are situate, selected and appointed by the sheriff of said county, charging therein, that such mode of assessment was not only unjust, but unconstitutional, and insisting that such assessment ought to be corrected, and his said lands valued at three dollars per acre.

This petition was presented to the County Court of St. Francis county, at the July term thereof for 1855, being the first term of said court held after the assessment of 1855, was filed in the office of the clerk of the County Court for said county under the statute in such case made and provided.

At the term of the court at which it was presented, the County Court proceeded to consider of, and act upon, the petition, and after hearing the evidence introduced upon the part of the appellant, and such as may have been introduced by the appellee, dismissed the petition of the appellant, without the relief prayed for, and rendered judgment against him for the costs, incident to proceedings thereon in the County Court. To which judgment of the court, the appellant, by his attorney, excepted at the time. The appellant moved the court in writing filed for a new trial, which, on consideration, was overruled by the court; to which appellant also excepted, and tendered his bill of exceptions, which was duly signed and sealed by the court; and from which it appears that the following evidence was introduced at the hearing of the above petition : that is to say, that the appellant was a non-resident of the county of St. Francis ; that the term, at which said petition was presented and heard, was the first term of the County Court of St. Francis county, held since the 25th March, 1855, the time at which the assessment list for said county was filed that year ; that the lands taxed and described in the petition were assessed to the appellant, for the year 1855, at the rate of $10, per acre ; that the lands, *generally, in the townships* in which such lands are situate, are not worth more than $6 per acre ; that the lands had a prospective value placed on them, and not a cash value ; and this was all the evidence adduced at the hearing of said petition, as the bill of exceptions expressly states.

The appellant, on his motion for a new trial as above, being over-ruled by the County Court, filed the affidavit and recognizance required by law, and prayed for an appeal from the judgment of the County Court to the Circuit Court of said county of St. Francis, which was granted.

At the October term, 1855, of the Circuit Court for St. Francis county, the appeal in this cause came up before that court, and the judgment of County Court was affirmed, no error being found in the transcript thereof.

The appellant appealed from the judgment of the Circuit Court of St. Francis county, affirming the judgment of the County Court of said county, and rendering judgment for costs against him, upon which appeal the cause is now pending in this court.

1. No question is made on the part of the appellee as to the jurisdiction of this court, derived *intermediately* through the Circuit Court. The appellant has, however, devoted much space in his brief to the discussion of the question of jurisdiction, as if, in his opinion, it were a matter of doubt whether this court can take cognizance of this cause by appeal from the Circuit Court. We think there can be no doubt on the subject, when the several acts of the Legislature, that have been passed bearing on the subject, are considered in connection with the various adjudications of this court construing them with reference to questions of juris-diction. Without, therefore, attempting to travel over the field of argument laid open by the appellant in this cause, we shall content ourselves by simply stating the result of our convictions on the subject; holding as we do, that this court has full jurisdic-tion of this cause, derived *intermediately* through the Circuit Court. See *Carnall vs. Crawford County*, 6 *Eng. Rep.* 613 ; *Allis ex-parte*, 7 *Eng. Rep.* 102 ; *Roberts vs. Williams*, 15 *Ark. Rep.* 45.

Having disposed of the above question, we will at once pro-ceed to the consideration and determination of the several errors assigned, as follows :

1. That the County Court of St. Francis county, erred in over-

ruling appellant's application to correct and adjust the assessment of the lands of appellant made by the sheriff.

2. That the County Court erred in overruling appellant's motion for a new trial.

3. That the judgment of the County Court should have been for the appellant instead of the appellee.

4. That the Circuit Court erred in holding there was no error in the record and proceedings, and in the judgment of the County Court.

5. That the Circuit Court erred, in affirming the judgment of the County Court.

6. That the Circuit Court erred, in rendering judgment for the appellee, and against the appellant.

1. It is insisted that the fourth section of the act of 1853, is virtually in conflict with that provision of the Constitution of the United States, *article* 4, *section* 2, that declares that : " The citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States," as well as the compact entered into between this State and the United States, when Arkansas was admitted into the Union, which forbids non-resident proprietors to be taxed higher than residents.

The fourth section of the act of 1853, is in these words : " That all lands belonging to non-residents, shall be valued by three house-holders of the election township, within which the lands are situate, to be appointed by the sheriff, and such valuation, provided it is not less three dollars per acre, shall govern the sheriff in assessing the same." See *Acts of* 1853, *page* 73.

In order to determine the question made by the appellant in reference to this section, it is necessary, that we should consider it with reference to the provisions of the revenue law of this State, applicable to residents, which are as follows :

" *Secion* 13. Each assessor shall require each person in his county to give in a description of all his lands, by township, range, section, quarter section, tract, lot or part thereof, and the number of acres in each particular tract or sub-division thereof.

*Section* 14. The sheriff or assessor shall make out a schedule of the property given in by each and every person for taxation, and its value, and when thus made out, it shall be sworn to by the person or his agent, as being the full amount of property owned by him subject to taxation, together with the true value thereof; provided, that no land shall be valued at less than three dollars per acre.

*Section* 15. The assessor shall require each person owning or holding taxable property in his county, to value the same under oath, valueing each lot or town lot separately, and each kind of other property separately from every other kind.

*Section* 19. If any taxable inhabitant of any township neglect or refuse, when called on to furnish the assessor, with a list of his taxable property, as required by law, or if the assessor has reason to believe that the list so furnished him is fraudulent, or does not contain a correct list of the property owned by such person, the assessor shall ascertain by the best means in his power, the taxable property and the value thereof, and as a penalty for such neglect, he shall assess said property at double its value." See *Digest*, 872. These are all the provisions of our law bearing on the subject, directly before us.

There can be no question, if the Legislature have, by the act of 1853, conferred "immunities and privileges" upon the citizens of this State not guaranteed thereby, or other acts in relation to the same subject matter, to the citizens of other States of this Union, holding interests in this State, that the act in question is repugnant to the provisions of the Constitution which we have quoted above; and, moreover, if the act of 1853, has the effect to tax the property of non-residents higher than it does that of residents, by the terms of the compact entered into with the United States, before herein referred to, that act is void, and cannot, in good faith, be enforced by the courts of the country. We will proceed at once to examine those various provisions with the view of determining the propositions which we have stated.

It is evident, we think, from the provisions of the statutes which

we have copied above, what objects the Legislature had in view by their enactment. There can be no doubt, but that the act of 1853, was passed to cure the defects which really existed in the law in reference to the assessment of property of non-residents, which was in force up to that time. The law, as copied from the *Digest*, required *all persons owning taxable property in this State, either by themselves or agents*, to furnish lists under oath to the assessor in the several counties. This requirement, as applicable to non-residents, must have been not only inconvenient and burdensome to that class, but highly insecure and unsatisfactory to the State. Burdensome to the non-resident for the reason, that its observance required him to have an agent in each county in the State, in which he might own taxable property, who should have a personal knowledge, not only of the kind of property owned by his principal, but from personal knowledge should be able to swear to its actual and intrinsic value. Insecure to the State, for the reason, that it was confiding to an individual, who might not be supposed to be informed fully on the subject, the assessment of the value of the property of others, who, from corruption or ignorance, might place too high an estimate on such property, or else value it so low as to defraud the State out of its legitimate revenue. By the 16*th section of the* 139*th chapter of our revenue law*, it is provided, that : " All lands shall be valued at the true value thereof in ready money, taking into consideration the fertility of the soil, the vicinity of the same to roads, towns, villages and navigable waters, water privileges on the same, and all other local advantages, &c. See *Digest, page* 872. It may be that the Legislature had become satisfied, from the experience derived from the practical working and operation of the law, as it existed prior to 1853, that it was not practicable for non-resident proprietors to furnish lists and appraisements, under oath, of their lands and property subject to assessment and taxation ; and hence, the necessity of the act of 1853, to cure the evils existing in the old law in respect to non-residents. This was evidently the mischief which the new act was intended to remedy.

If so, the object the Legislature had in view, was not only laudable, but eminently calculated to accomplish the design intended. The appointment of three house-holders from the *vicinage*, of the *election township* in which the lands of non-residents might or should be situate, would be more likely to effectuate and attain this design, than by any other means that could be devised or suggested. "Being residents, and, consequently, familiar with the actual locality of the lands, with reference to the character of the soil, its proximity to roads, towns, villages and navigable waters with privileges on the same, and all other local advantages," it is fair to presume, that they would be more competent to determine its "true value in ready money," than its proprietor, a stranger to all these, or even an agent, who, ordinarily, could not be expected to be fully informed on these subjects. How it is possible, under such circumstances, for the lands of non-residents to be assessed higher than their real value would justify or warrant, we are unable to conceive, without it should be assumed, that the assessor in every instance was corrupt; and, consequently, that he would only appoint the appraisers of such men as would, by forswearing, loan themselves to his corrupt designs. The whole scope and design of the fourth section of the act of 1853, was to prescribe a mode and means of ascertaining the value of certain species of taxable property, and this clearly was within the province and power of the Legislature. It is provided by the Constitution of this State, under the head of "Revenue," that, "all revenue shall be raised by taxation to be fixed by law," and that "all property subject to taxation shall be taxed according to its value—*that value to be ascertained in such manner, as the General Assembly shall direct*," &c.

The Legislature has *directed* one *manner* to be pursued for the ascertainment of the value of taxable property owned by *residents*, and another manner for the ascertainment of the value of such property when owned by non-residents. We have endeavored to show, that this policy was forced on the Legislature, on account of the inconvenience or impracticability of the old system; that

it cannot, except in extreme cases, operate to the disadvantage of non-residents. The difference in the two modes devised in the case of residents, and non-residents does not, in our judgment, amount to a discrimination in favor of our own citizens, both being alike fair. It is the fact of discrimination in favor of our citizens, or the imposition of burdens upon the citizens of other States, from which our own citizens are made exempt, which must be the true test to determine the constitutionality of an act, such as we are at present considering. We find no such *discrimination* in the act in question; and, therefore, hold, that it is not obnoxious to the *second section of the fourth article of the Constitution*, as copied above, and that it does not, in its letter or spirit, violate the compact entered into between this State and the United States at the time of the admission of Arkansas into the Union and family of States.

2. Having disposed of the above question, we will next proceed to consider and determine the remaining one raised by the assignment of errors. That is to say, whether the County Court of St. Francis county ought to have, from the evidence set forth in the bill of exceptions and stated above, reduced the assessment upon the lands of the appellant?

By the practice, the appellant on presenting his petition to the County Court to correct and adjust his assessment, took upon himself the burden of proving the averments and allegations set forth in his petition. It was his duty, therefore, to have furnished proof necessary to make out the truth of his charges. We do not regard the evidence set out in the bill of exceptions, of such character as to out weigh the assessment of three persons, who fixed the value on the lands of appellant at ten dollars per acre; particularly, when we are forced to the conclusion, as we are in this instance, that the three assessors appointed by the sheriff made up their assessment and valuation from actual observation or knowledge of the worth of the lands assessed by them; whilst, the witness or witnesses, who deposed or testified before the County Court, judging from the manner in which the evidence is put down, testified only from a general knowledge, which such wit-

ness or witnesses had of the lands of the townships in which the lands of the appellant are situate, and not from a knowledge of the particular lands upon which the assessment was made. The statement of the testimony in the bill of exceptions, is, that the lands *generally in those townships*, are not worth more than six dollars per acre." The enquiry before the County Court was not as to the value of the lands *generally, in the townships* in which appellants-lands were situate, but was, as to the value of the particular lands of the appellant. Beside this, the transcript does not show or indicate how many witnesses swore to the facts stated. This court is bound to presume in favor of the judgment of the County Court: and, consequently, that there was but *one*, or at most, not more than *two* witnesses, who swore to the facts stated. Supposing the appraisers sworn by the sheriff, and the *one* or *two* witnesses, who testified in the County Court, to be equally creditable, the weight or preponderance of evidence is in favor of the sheriff's assessment of the lands at ten dollars per acre. In either view, we think the judgment of the County Court right, and will not, therefore, disturb it.

3. The determination of the last preceding proposition is a virtual decision of the cause, upon the other errors assigned. The Circuit Court, acting upon the transcript from the County Court, very properly held there was no error therein, and affirmed the judgment of said court.

Wherefore, in view of the case as above, we affirm the judgment of the St. Francis Circuit Court at the costs of the appellant. Let the judgment be affirmed.

Absent, Mr. Justice SCOTT.