## ATTORNEY GENERAL *v.* WESTERN UNION TEL. Co.

(*Circuit Court, D. Massachusetts.* November 28, 1887.)

1. TELEGRAPH COMPANIES—TAXATION—POWER OF STATE.
    Pub. St. Mass. *c.* 13, § 40, provides that every railroad and telegraph company shall pay annually a tax upon its corporate franchise, at a valuation thereof equal to the aggregate value of the shares in its capital stock, after deducting from such valuation such portion as is proportionate to the length of the line lying without the state; and also an amount equal to the value of the real estate and machinery located and subject to local taxation within the state. *Held,* that the right to tax telegraph companies under this statute is not impaired by Rev. St. U. S. §§ 5263–5266, conferring certain privileges on telegraph companies.

2. CONSTITUTIONAL LAW — INTERSTATE COMMERCE — TAXATION OF TELEGRAPH COMPANIES.
    A tax levied under Pub. St. Mass. *c.* 13, § 40, providing for the taxation of railroad and telegraph companies, is not void as repugnant to Const. U. S. art. 1, § 8, which gives congress power to regulate commerce between the several states.[1]

In Equity.

*Harvey N. Shepard,* Asst. Atty. Gen., for complainant.

*George S. Hale,* for defendant.

COLT, J. This is an information filed by the attorney general of Massachusetts under section 54, *c.* 13, of the Public Statutes of Massachusetts, to collect a tax claimed to be due, and for an injunction restraining the defendant from the further prosecution of its business until such tax is paid. The defendant is a telegraph company organized under the laws of the state of New York for purposes of business and profit, and having a capital stock divided into shares. On or about June 12, 1867, the company filed its written acceptance with the postmaster general of the United States of the restrictions and obligations required by the act of congress of July 24, 1866, relating to telegraphs. Rev. St. §§ 5263–5269. By section 5263, it is provided that any telegraph company, organized under the laws of any state, shall have the right to construct, maintain, and operate lines of telegraph through and over any portion of the public domain of the United States, over and along any of the military or post roads of the United States which have been, or may hereafter be, declared such by law, and over, under, or across the navigable streams or waters of the United States. The information was originally filed in the state court, April 27, 1886, and removed to this court by the defendant. On May 1, 1885, the defendant owned or controlled under lease or otherwise, 146,052.60 miles of telegraph lines, of which 2,833.05 were situated within the state of Massachusetts. In September, 1885, the tax commissioner, in the manner required by the laws of the state, estimated the fair cash valuation of the stock of the corporation on May 1, 1885, at $47,500,000, and allowed as credits, for

[1] Respecting interstate commerce in general, see Pearson v. Distillery Co., (Iowa,) 34 N. W. Rep. 1. and note.

shares held by the company unissued, and stocks in other companies outside of its system, $8,773,622.70, leaving $38,713,924. The commissioner considered the valuation of the corporate franchise of the defendant subject to taxation in the state to be $750,952, and he assessed a tax thereon of $10,618.46. More than 2,334.55 miles of the line within the state are over, under, or across post-roads, but the commissioner ignored this fact. The defendant has continually transmitted messages over its lines on said post-roads between the several departments of the United States government, at rates fixed by the postmaster general, as required by the act of July 24, 1866, (Rev. St. §5266.) It is impossible for the company to determine what portion of any sums received were for services performed in the state in the transmission through the state, or any portion thereof, of messages received or delivered out of it, or what portion of any sums received were for services not on lines of said post-roads; but approximately 70 per cent. of the receipts were for messages received and delivered out of the state. The defendant on May 1, 1885, owned a large amount of real estate, subject to local taxation out of the state of Massachusetts, on which there was assessed and paid more than $48,000 of taxes. In the assessment of the tax herein complained of no allowance or deduction was made for this, and, in ascertaining the valuation of defendant's franchise for the purposes of taxation, no account was taken of said real estate, or buildings, or the taxes paid thereon. The position taken by the defendant is that this tax, levied under chapter 13 of the Public Statutes of Massachusetts, is illegal—*First*, because of its operation and effect upon a franchise granted by the United States, and used for its purposes and benefit; *second*, because it is a tax upon interstate or foreign commerce; *third*, because it is in effect levied upon real estate located and taxed in another state. There is nothing in the act of July 24, 1866, conferring certain privileges on telegraph companies who shall choose to take the benefit of its provisions, which impairs the right of a state to tax the property or franchise of the corporation in the manner exercised by the state of Massachusetts in the present case; nor is such a tax void as repugnant to section 8 of article 1 of the constitution, which gives congress power to regulate commerce with foreign nations and among the several states.

In *Telegraph Co.* v. *Texas*, 105 U. S. 460, the supreme court held a state statute, imposing a specific tax on each message which it transmitted beyond the state, or which a public officer sends over its lines on business of the United States, was void so far as it was a tax on interstate business, or a tax by a state on the means employed by the United States to execute its constitutional powers. It will be observed that this was a direct tax on each message sent out of the state, as well as a direct tax on messages sent by the government. In the present case, however, the tax is imposed upon the shares of capital stock which represent the property and franchise of the corporation. Every tax on the property or franchise of a telegraph company may operate to increase the cost of messages sent, but that does not make such a tax invalid. In the case just referred to, Chief Justice WAITE, speaking for the court, says:

"The Western Union Telegraph Company, having accepted the restrictions and obligations of this provision by congress, occupies in Texas the position of an instrument of foreign and interstate commerce, and of a government agent for the transmission of messages on public business. Its property in the state is subject to taxation the same as other property, and it may undoubtedly be taxed in a proper way on account of its occupation and its business. The precise question now presented is whether the power to tax its occupation can be exercised by placing a specific tax on each message sent out of the state, or sent by public officers on the business of the United States."

It was this last question that was determined in the negative. In the *Delaware Railroad Tax Case,* 18 Wall. 206, an act of the legislature of Delaware, imposing a tax quite similar to the one now complained of, was held not to conflict with the power of congress to regulate commerce. The court in that case observes:

"The state may impose taxes on the corporation, as an entity existing under its laws, as well as upon the capital stock of the corporation or its separate corporate property. And the manner in which its value shall be assessed, and the rate of taxation, however arbitrary or capricious, are mere matters of legislative discretion. It is not for us to suggest in any case that a more equitable mode of assessment or rate of taxation might be adopted than the one prescribed by the legislature of the state; our only concern is with the validity of the tax; all else lies beyond the domain of our jurisdiction."

The question of what constitutes a tax upon foreign or interstate commerce has frequently come before the supreme court for adjudication, and I find no case which sustains the view taken by the defendant in this case. The question is carefully reviewed in the recent cases of *Fargo* v. *Michigan,* 121 U. S. 230, 7 Sup. Ct. Rep. 857, and *Steam-Ship Co.* v. *Pennsylvania,* 122 U. S. 326, 7 Sup. Ct. Rep. 1118. Section 40, c. 13, of the Public Statutes of Massachusetts, provides that every corporation embraced in the provision of section 38 shall pay a tax upon its corporate franchise, at a valuation thereof equal to the aggregate value of the shares in its capital stock at a certain rate determined as therein set forth, deducting in the case of railroads and telegraph companies whose lines extend beyond the limits of the commonwealth such portion of the whole valuation of their capital stock as is proportional to the length of that part of their line lying without the commonwealth; and also an amount equal to the value as determined by the tax commissioner of their real estate and machinery located and subject to local taxation within the commonwealth; in case of other corporations, an amount shall be deducted equal to the value of their real estate and machinery subject to local taxation wherever situate. The deductions in the case of corporations generally, of all real estate and machinery wherever situate, and in the case of railroad and telegraph companies whose lines extend beyond the limits of the commonwealth, of only the real estate and machinery lying within the state, is a question of legislative discretion, and no valid ground has been suggested upon which this court for this reason has a right to declare a tax so levied invalid, in whole or in part. I think a decree should be entered for the complainant, and that an in-

junction as prayed for should be granted, unless the amount taxed is paid by the defendant within 30 days from the entry of a decree in the cause.   Decree for complainant.