REINHART et al. v. McDONALD, State Treasurer.

(Circuit Court, N. D. California. August 17, 1896.)

No. 11,915.

1. JURISDICTION OF FEDERAL COURTS—ENJOINING COLLECTION OF STATE TAXES.
   Where a state has provided for suits against its treasurer for taxes claimed to be illegal (Pol. Code Cal. § 3669), such a suit, even if it be considered as a suit against the state, may be brought in a federal court when other jurisdictional facts exist, although the statutory provision may only apply to suits in the state courts.

2. CONSTITUTIONAL LAW—TAXATION—SITUS OF RAILROAD ROLLING STOCK—INTERSTATE COMMERCE.
   It is no objection to the imposition of a state tax upon railroad rolling stock used partly within the state that the same is engaged as a vehicle of interstate commerce, or that its legal situs is in another state or territory, where taxes on it have been paid.

3. SAME.
   The constitution of California, which provides that "all property of the state not exempt under the laws of the United States shall be taxed," etc., and declares that "property," as here used, includes moneys, credits, etc., "and all matters and things, real, personal and mixed, capable of

private ownership," applies to and includes rolling stock used partly in the state, but belonging to a corporation of another state, whose property is operated under a lease.

This was a suit by J. W. Reinhart and others, receivers of Atlantic & Pacific Railroad Company, against J. R. McDonald, treasurer of the state of California, in respect to certain state taxes upon rolling stock, which plaintiffs claim to be illegal.

C. N. Sterry and E. S. Pillsbury, for plaintiffs.

W. F. Fitzgerald, Atty. Gen. Cal., and W. H. Anderson, Asst. Atty. Gen. Cal., for defendant.

McKENNA, Circuit Judge. The allegations of the complaint in this action are that the Atlantic & Pacific Railroad Company, of which the plaintiffs are the receivers, is the lessee of a certain line of railroad situated in the state of California, known as the Southern Pacific Railroad Company; that, in the operation of such railroad, it was equipped with 89 cars and locomotive engines, of the value of $56,810, which rolling stock it had in use and operation at all times along the line of its road; that all of said rolling stock has been assessed, and the tax thereon collected, in the territory of New Mexico; that the said rolling stock was used in interstate commerce carried on between the states of Illinois and California; that the railroad leased from the Southern Pacific Company as aforesaid was assessed by the state board of equalization to said Southern Pacific Railroad Company, and the assessment of said railroad, including the pro rata share of the entire rolling stock of the Southern Pacific in California, being levied thereon, was paid. The action is brought against the treasurer of the state of California, in accordance with section 3669 of the Political Code, which enables suit to be brought against the treasurer of the state for taxes claimed to be illegal. The defendant demurs to the complaint, on the ground of want of jurisdiction of the court to maintain the action, and also on the ground that the complaint does not state a cause of action.

The principal point made on the first ground of the demurrer is that the suit is essentially one against the state of California, and that such suit cannot be maintained against the state without its consent, and that the consent given in section 3669 of the Political Code is of suit brought only in the state courts. The view that this is a suit against the state is presented by the attorney general with great strength and plausibility. But, even if the contention be true, I think it is a fair deduction from the authorities, as from principle, that, the right of suit against the treasurer of the state being given, it may be brought in the federal courts when other grounds of jurisdiction exist, as they do in this case. I do not think it is necessary to review the cases. They are very numerous, and the care of counsel has cited all of them.

The claim of exemption from taxation of the property described in the complaint is based on the following grounds: First, that the property is engaged in interstate commerce; second, that its

situs is New Mexico, where taxes on it have been paid; third, that the Atlantic & Pacific Railroad Company is not the owner of the railroad, and, under the constitution of the state of California, the rolling stock can only be assessed to the owner of the railroad.

The first two grounds are answered by the cases of Marye v. Railroad Co., 127 U. S. 117, 8 Sup. Ct. 1037, and Pullman's Palace-Car Co. v. Pennsylvania, 11 Sup. Ct. 876.

The constitution of the state of California provides as follows:

Section 1, art. 13: "All property of the state, not exempt under the laws of the United States shall be taxed in proportion to its value, to be ascertained as provided by law. The word 'property,' as used in this article and section, is hereby declared to include moneys, credits, bonds, stocks, dues, franchises, and all other matters and things, real, personal and mixed, capable of private ownership."

Section 10, art. 13: "* * * The franchise, roadway, roadbed, rails, and rolling stock of all railroads operated in more than one county in this state shall be assessed by the state board of equalization, at their actual value, and the same shall be apportioned to the counties, cities and counties, cities, towns, townships, and districts in which such railroads are located, in proportion to the number of miles of railway laid in such counties, cities and counties, cities, towns, townships, and districts."

These provisions seem to need no interpretation. The first section is so comprehensive that it can only be defined in terms of itself; and it certainly embraces—as it exactly and carefully says it embraces—all matters and things "capable of private ownership." Section 10 provides a means for the assessment of certain kinds of those things, and it was said by the supreme court of California in People v. Sacramento Co., 59 Cal. 325, to be self-executing. But it is urged by the plaintiff that there must be a union of them in the same ownership, as a condition of assessment. This view is supported by an ingenious and puzzling argument, aided (or apparently aided) by some remarks of Justice Harrison in People v. Central Pac. R. Co., 105 Cal. 587, 38 Pac. 907. The learned justice said:

"The franchise is a unit, and can be transferred only as a unit, and the rolling stock has no particular situs in any county, but, in connection with the roadway and roadbed, is essential for the enjoyment of the franchise, while the whole—the franchise, roadway, roadbed, rails, and rolling stock—constitute an entirety incapable of division."

The question and circumstances of that case were different from those of the case at bar. In that case the question before the court was the constitutionality of certain provisions of the Political Code of the state, making a class of railroads operated in more than one county. To sustain this classification, it was necessary for the court to find, and the court did find, a difference in the condition of property which had situs (if I may so speak) in many counties, as the franchise, or situs in no particular county, as rolling stock. The constitution clearly made a class of certain species of property, and, besides, it was equally clear that, if delinquent taxes were attempted to be collected on such property as on other property, embarrassments would necessarily arise. How, indeed, in the ordinary way, could the taxes be realized? How a sale or transfer be made in any particular county for its share of taxes apportioned

under the constitution? It was truly said: "Even if the roadway within the county could be described, there could be no apportionment to the several counties of the franchise, or of the rolling stock, which could serve as a description or be capable of transfer." Their value, or the value of either, could be apportioned, and the taxes recovered, by the action directed by section 3670 of the Political Code to be brought by the controller in the name of the people of the state to collect the taxes upon property assessed by the state board of equalization. It was to illustrate this embarrassment, not to express a principle (neither necessary to his reasoning nor to the points involved), which might exempt some of the property of the state from taxation, that Justice Harrison used the language he did.

It is further urged against the legality of the taxes that the provisions of the constitution apply only to California railroads, and for this the case of Marye v. Railroad Co., supra, is relied on. The case was based on a bill in equity filed by the Baltimore & Ohio Railroad Company against the taxing officer of the state of Virginia, for the purpose of enjoining him from selling certain engines and cars, the property of the complainant, for the payment of a tax alleged to have been illegally assessed thereon. There was a decree in the circuit court granting the relief prayed for, from which the appeal was prosecuted. The Baltimore & Ohio Railroad Company was a corporation organized under the laws of Maryland, and a citizen thereof, by virtue of whose charter its rolling stock was exempt from taxation. The line of its road did not at any point lie in the state of Virginia. It, however, connected with certain roads belonging to corporations incorporated by various acts of the legislature of Virginia. In the statement of the case, the court said:

"The act of the general assembly of the state of Virginia under which the assessment and collection of these taxes were sought to be justified is contained in section 20, c. 119, of the Acts of the Virginia Legislature, Session of 1881–1882, being part of the taxing laws of the state originally enacted in 1870 and 1871, and continued with amendments to the present time. The material part of the act applicable to this case was as follows: '19. Every railroad and canal company not exempted from taxation by virtue of its charter shall report annually on the first day of June, to the auditor of public accounts, all of its real and personal property of every description, as of the first day of February of each year, showing particularly in what county or corporation such property is located, and classifying the same under the following heads: First. Roadway and track, or canal bed. Second. Depots, depot grounds and lots, station buildings and fixtures, and machine shops. Third. Real estate not included in other classes. Fourth. Rolling stock, including passenger, freight, cattle, or stock; baggage, mail, express, sleeping, palace and all other cars owned by or belonging to the company; boats, machinery, and equipments; houses and appurtenances occupied by lockgate keepers and other employés. Fifth. Stores. Sixth. Telegraph lines. Seventh. Miscellaneous property. Every such company shall report on or before the first day of June of each year, the gross and net receipts of the road or canal for the twelve months preceding the first day of February of each year, and in all cases the report shall be so made as to give the data on which the same is made. If such road or canal is only in part within the commonwealth, the report shall show what part is within the commonwealth, and what proportion the same bears to the entire length of the road or canal, and shall apportion the receipts accordingly. The reports herein required shall be verified by the oath of the president or other proper officer. Upon

the receipt of every such report it shall be the duty of the auditor of public accounts to lay the same before the board of public works, who shall, after thirty days' notice previously given to the president, treasurer, or other proper officer, proceed to ascertain and assess the value of the property so reported, upon the best and most reliable information that can be procured; and to this end shall be authorized and empowered to send for persons and papers should it be deemed necessary. A certified copy of the assessment, when made, shall be immediately forwarded by the secretary of the board to the president or other proper officer of every railroad or canal company so assessed, whose duty it shall be to pay into the treasury of the state, within sixty days after the receipt thereof, the tax which may be imposed thereon by law. A company failing to make such report, or to pay the tax assessed upon its property, shall be immediately assessed, under the direction of the auditor of the public accounts, by any person appointed by him for the purpose, rating their real estate and rolling stock at twenty thousand dollars per mile; and a tax shall at once be levied on such value at the annual rate levied upon the value of the other property for the year. Such tax so levied, as well as the sum required to be paid upon the report hereinbefore mentioned, if the same be not paid at the time provided herein, shall be collected by the treasurer of some county in which such company owns property, to whom the auditor may deliver the assessment or a copy thereof. The treasurer may distrain and sell any personal property of such company, and shall pay the taxes into the treasury within three months from the time of the assessment, or a copy as aforesaid may be delivered to him. The compensation of such treasurer to be the same as he receives for collecting other taxes in his county or corporation.' "

The case has a very strong resemblance to the one at bar, but it depended upon the interpretation of the Virginia statute, which is differently expressed, and has specializing provisions which are not found in the California constitution. It was upon these special provisions the opinion was based. Justice Mathews, speaking for the court, said:

"The terms of the act, indeed, include 'every railroad and canal company not exempted from taxation by virtue of its charter'; but that language, according to a general rule of interpretation, must be confined to corporations deriving their authority from the laws of Virginia. It is apparent, also, from the other expressions contained in the law, as well as its whole purview, that it was intended to apply only to such domestic corporations as, in the case of railroad companies, were the owners of railroads and the property usually appurtenant thereto, lying and being within the state."

The language of the California constitution is:

"All property of the state, not exempt under the laws of the United States, shall be taxed in proportion to its value, to be ascertained as provided by law."

The California constitution, therefore, applies to property without regard to its kind or ownership. It is only necessary that it should be "of the state." The limitations of the Virginia statute are not contained in the California constitution.

The demurrer is sustained, with leave to plaintiffs to amend within 20 days, if they shall be so advised; and the motion to dismiss is denied.