## In re WESTERN UNION TELEGRAPH CO.

No. 2010.   Opinion Filed September 26, 1911.

(118 Pac. 376.)

1.   **TAXATION—Equalization—Appeal—Right.** An appeal lies to the courts from the action of equalization boards in assessing property.

2.   **TAXATION—State Board Equalization—Issues on Appeal.** Under Laws 1910, c. 87, § 1, on appeal from the State Board of Equalization to the Supreme Court, the issues are confined to those presented to the Board of Equalization.

3.   **SAME—Trial De Novo.** Laws 1910, c. 87, § 1 provides that no matter shall be reviewed on appeal from the State Board of Equalization to the Supreme Court which was not presented to the board. Held that, on appeal to the Supreme Court from an assessment of the property of a telegraph company by the State Board of Equalization, there being no provision for certifying up the evidence taken by the board, the issues heard before the board are triable de novo, and the evidence may be introduced by both parties; it not being confined to that before the State Board.

In the matter of the Appeal of the Western Union Telegraph Company from the assessment of its property by the State Board of Equalization. On motions for the appointment of a referee to take evidence on trial in the Supreme Court and for the dismissal of the appeal. Motion to appoint referee sustained, and motion to dismiss overruled.

*Cottingham & Bledsoe* (*G. H. Fearons* and *Francis N. Whitney*, on the brief), for plaintiff in error.

*Chas. West* (*C. J. Davenport*, on the brief), for defendant in error.

PER CURIAM. The plaintiff in error has moved for the appointment of a referee to take evidence on a trial *de novo* in this court in this proceeding. The Attorney General, in his oral argument, has conceded that a referee should be appointed, if all things have been done necessary to perfect this appeal. The motion to dismiss the appeal recites as follows:

"As shown by the record filed herein, no objection was presented to or decided by said board, and the only matters sought

to be reviewed here are said objections which were not presented or decided below."

Plaintiff in error insists that this appeal presents for the consideration of this court the question as to whether the property of the Western Union Telegraph Company, subject to taxation in the state of Oklahoma for the fiscal year ending June 30, 1911, was of the value of $411,910.05, and no more, and that this question was presented to the Board of Equalization in the form of a return in detail, consisting of 334 pages, containing a detailed statement of the items of property in each of the counties, townships, cities, school districts, etc., and a summary or recapitulation of the same, which return was properly verified. That this return contains a history of the organization of the Western Union Telegraph Company, a statement of the amount of its capital stock, the amount paid up, the amount of its property upon which it should pay taxes in Oklahoma, the par value of its stock, the highest, lowest, and average selling prices thereof, the gross receipts of all sources for the year ending June 30, 1909, expense for repairs for the year ending June 30, 1909, the amount expended for improvements for the year ending June 30, 1909, and the interest on bonds for said year. That said return was made upon a form printed and sent out by the Auditor for and on behalf of the State Board of Equalization. That on the back of each of the pages are printed instructions, over the printed signature of the Auditor, and extracts from the laws under which the return is required to be made on the form provided by the Auditor. That said return presented to the board a complete statement of every material matter going to show the value of the property of the telegraph company in the state of Oklahoma, subject to taxation, and presented the contention of the plaintiff in error that its property, subject to taxation, was worth the sum of $411,910.05, and no more.

The notice of the intention of the plaintiff in error to appeal, filed with the Secretary of State, is as follows:

"You are further notified that the Western Union Telegraph Company insists that in the assessment of its property for the purpose of taxation by the State Board of Equalization for the

·fiscal year ending June 30, 1911, many errors were committed, to its prejudice and detriment, and to the increasing unlawfully of the burdens of taxation upon its property, among others, in the following particulars, to wit:

"First. That the State Board erroneously, without evidence, without justification or excuse, increased the value of the property of the Western Union Telegraph Company as returned by it to 200 per cent. of the amount of said return. The value so returned, and which is the fair and reasonable cash value of said property, being $411,410. The value at which same was fixed by said State Board being $1,235,730. That the State Board therefore assessed the property of the Western Union Telegraph Company for taxation in the state of Oklahoma for the fiscal year ending June 30, 1911, at the sum' of $823,820 above the actual fair cash value of said property subject to taxation in the state of Oklahoma for said fiscal year.

"Second. That the Western Union Telegraph Company returned said property to the Auditor of the state of Oklahoma, as required by the statutes and Constitution of this state, at its fair cash value; that said return gave in detail each item of property owned by the Western Union Telegraph Company in the state of Oklahoma, and subject to taxation therein, and the fair cash value thereof, and the fair cash value of the aggregate thereof; that in increasing the value so returned by the Western Union Telegraph Company the said board did so arbitrarily, without evidence and without regard to the value of said property, and that the valuation so fixed is in excess of the true actual cash value thereof, as above stated, in the sum of $823,820.

"Third. The Western Union Telegraph Company says that the State Board of Equalization, in arriving at the value of its property subject to taxation in the state of Oklahoma for the fiscal year ending June 30, 1911, erroneously and unlawfully considered and used as a basis the value of the stocks and bonds and securities of the Western Union Telegraph Company upon a mileage basis; that the same was neither a lawful nor a just basis, for the reason· that the stocks and bonds represent every element of value of the property of the Western Union Telegraph Company, including its federal franchise and its right to an interstate business; that the apportionment of the same, on ·mileage basis, places the miles of lines in the state of Oklahoma upon an equal footing with the lines in the older states with a better and larger established business, and in that way subjects

to taxation by the state of Oklahoma property located outside said state, and not subject to taxation therein.

"Fourth. That the property of the Western Union Telegraph Company, in other states than the state of Oklahoma, is much more valuable than it is in the state of Oklahoma, as to both wire mileage and pole mileage. basis; that the earnings per mile are much larger in other states than the state of Oklahoma, both gross and net, and the property of the Western Union Telegraph Company in other states is therefore of much greater value in proportion to the mileage thereof, both wire and pole, than it is in the state of Oklahoma, and that the State Board of Equalization, in apportioning the value of said property upon a mileage basis, fixed the value of the property in the state of Oklahoma far in excess of its actual value.

"Fifth. The Western Union Telegraph Company further says that its property in the state of Oklahoma is not worth a greater sum than would result from the capitalization of its net earnings in said state, including interstate business, Oklahoma's share of the interstate and transtate business, and miscellaneous revenue, such as wire rentals, etc., and other items received or earned in the state; that the total amount so received in the state of Oklahoma for the fiscal year ending June 30, 1909, figured out on the basis hereto attached and marked 'Exhibit A,' amounts to the sum of $227,829.46; that the total, fair, and necessary expenses, without deducting any sum whatever for deterioration upon its property, as per statement hereto attached and marked 'Exhibit B' and made a part hereof, is the sum of $211,071.27, leaving a balance of revenue over operating expenses of $16,758.19, without any allowance whatever for depreciation on the property of the Western Union Telegraph Company within the state; that in making said calculations, as will appear from said Exhibits A and B, most liberal allowances have been made in favor of the state, giving it credit for all sources of revenue that it could have any possible claim to, and crediting it with any minimum amount of expenses chargeable to Oklahoma business; that a reasonable and fair sum for the depreciation on the property of the Western Union Telegraph Company in the state of Oklahoma per annum would be not less than the sum of $35,000; that so allowing said sum, there was a deficit in the revenues of said company in the state, for the fiscal year ending June 30, 1909, of $18,241.81; that at no period of time within the last five years has there been any actual net

revenue from the earnings of the company in the state of Oklahoma after deducting the necessary and fair expenses and allowing a fair and reasonable sum for the depreciation of the property; that at no time in the history of the company has its business in the state of Oklahoma shown a clear net revenue over and above expenses and depreciation; that therefore the State Board erred in increasing the value of the property of the Western Union Telegraph Company upon the theory that its earnings in the state of Oklahoma were sufficient to justify the same.

"Sixth.   That in arriving at the said valuation so placed by the State Board of Equalization on the property of the Western Union Telegraph Company, for the purposes of taxation for the fiscal year ending June 30, 1909, the said board unlawfully considered and treated as a part of the value of the property, subject to taxation in the state of Oklahoma, the property owned by the Western Union Telegraph Company outside the state of Oklahoma, and which is never brought into or used in the state of Oklahoma, and which is not subject to taxation in the state of Oklahoma.

"Seventh.   That the assessment so made by the State Board of Equalization of the property of the Western Union Telegraph Company for the fiscal year ending June 30, 1909, was based upon erroneous principles, and does not in any sense represent the true, actual cash value of the property of the Western Union Telegraph Company subject to taxation in the state of Oklahoma for said period.

"Eighth.   That the result of assessing the property of the Western Union Telegraph Company in the state of Oklahoma, for the fiscal year ending June 30, 1911, at the sum of $1,235,730 is to require the Western Union Telegraph Company to bear three times its just share of the burdens of taxation within the state of Oklahoma.

"Ninth.   That in arriving at the value of the property of the Western Union Telegraph Company, for the purpose of taxation in the state of Oklahoma for the fiscal year ending June 30, 1911, the State Board of Equalization considered incompetent, irrelevant, and misleading evidence, and fixed said valuation, not upon the value of the property of the Western Union Telegraph Company in the state of Oklahoma, but upon the value of its property located outside the state of Oklahoma, and not subject to taxation therein.

"Tenth.   That this appeal is taken and this notice is given within 60 days of the adjournment of said board, as required

by the act of the Legislature, allowing appeals from the State
Board of Equalization to the Supreme Court of the state; that,
because of the wrong and injustice done the Western Union
Telegraph Company in so assessing its property, it appeals from
the order of the State Board of Equalization so fixing the value
of its property to the Supreme Court of this state, pursuant to
an act of the Legislature of the state of Oklahoma entitled 'An
act providing for the appeals from the action of the State Board
of Equalization,' approved March 24, 1910, and found in the
Session Laws of the state of Oklahoma of 1910, at pages 173,
174, and serves this, its notice, upon the Secretary of State pur-
suant to the provisions of said statute."

The statutes in force governing such appeal are in part as
follows:

"Appeals may be taken from all county boards of equaliza-
tion to the county court of the county wherein the assessment is
made, within thirty days after the adjournment thereof, and to
the Supreme Court if from the State Board within sixty (60)
days after the adjournment of such board, but not afterwards:
Provided, that, no matter shall be reviewed on appeal which was
not presented to the board appealed from; and provided further,
that every appeal shall state specifically the objections to the
assessment and the relief sought." (Section 1, c. 87, p. 173,
Sess. Laws 1910.)

"In order to perfect his appeal, the party appealing shall file
a notice of his appeal with the county clerk of the county wherein
the assessment was made, if appeal be taken from the county
board of equalization, and with the Secretary of State if from
the State Board of Equalization. In such notice shall be stated
the grounds of appeal. During the pending of such appeal, the
party appealing shall not be required to pay taxes upon the prop-
erty in regard to the assessment of which the appeal is taken."
(Section 2, c. 87, p. 173, Sess. Laws 1910.)

"The proceedings before the Board of Equalization, and ap-
peals therefrom, shall be the sole method by which assessment or
equalization shall be corrected or taxes abated. Equitable rem-
edies shall be resorted to only where the aggrieved party has no
taxable property within the tax district of which complaint is
made." (Section 3, c. 87, p. 173, Sess. Laws 1910.)

It seems to be settled by the weight of authority that an ap-
peal will lie from the action of equalization boards, in the assess-

ment of property, to the courts. *Tenn. Coal, Iron & R. Co. v. State,* 141 Ala. 103, 37 South. 433; *Redd v. San Francisco County,* 17 Ark. 416; *Randle v. Williams,* 18 Ark. 380; *Nashville Lumber Co. v. Howard County,* 89 Ark. 53, 115 S. W. 936; *Prairie County v. Matthews,* 46 Ark. 383; *Bradley v. City of New Haven,* 73 Conn. 646, 48 Atl. 960; *People v. Goldtree et al.,* 44 Cal. 323; *Pierre Waterworks Co. v. County of Hughs,* 5 Dak. 145, 37 N. W. 733; *Ingersoll v. City of Des Moines,* 46 Iowa, 553; *Richards v. Incorporated Town of Rock Rapids,* 72 Iowa, 79, 33 N. W. 372; *First Nat. Bank of Easterville v. City Council,* 136 Iowa, 203, 112 N. W. 829; *Frost v. Board of Review, Oskaloosa,* 114 Iowa, 103, 86 N. W. 213; *Farmers' Loan & Trust Co. v. Town of Fonda et al.,* 114 Iowa, 728, 87 N. W. 724; *In re Seaman,* 135 Iowa, 543, 113 N. W. 354; *Stein v. Local Board of Review,* 135 Iowa, 539, 113 N. W. 339; *Kamrar v. Webster City* (Iowa) 120 N. W. 120; *Burns et al. v. McNally, Mayor, et al.,* 90 Iowa, 436, 57 N. W. 908; *T. W. Silven v. Board of County Commissioners,* 76 Kan. 687, 92 Pac. 604, 13 L. R. A. (N. S.) 716; *Shreves et al. v. Gibson,* 76 Kan. 709, 92 Pac. 584; *Ward v. Beale et al.,* 91 Ky. 60, 14 S. W. 967, 12 Ky. Law Rep. 671; *Marion County Court et al. v. Wilson,* 105 Ky. 302, 49 S. W. 799, 20 Ky. Law. Rep. 1152; *Pons v. Board of Assessors,* 118 La. 1101, 43 South. 891; *State ex rel. Merrick v. District Court,* 33 Minn. 235, 22 N. W. 625; *State ex rel. Mayor of City of Duluth v. Ensign,* 55 Minn. 278, 56 N. W. 1006; *Simmons v. Board of Supervisors of Scott County,* 68 Miss. 37, 8 South. 259; *Edes v. Boardman,* 58 N. H. 580; *Van Riper, etc. v. Township of North Plainfield,* 43 N. J. Law 349; *Western Union Telegraph Co. v. Dodge County,* 80 Neb. 18, 113 N. W. 805; *First National Bank v. Webster County,* 77 Neb. 813, 110 N. W. 535; *Id.,* 77 Neb. 815, 113 N. W. 190; *Nebraska Telephone Co. v. Hall County,* 75 Neb. 405, 106 N. W. 471; *Stanley v. Supervisors of Albany,* 121 U. S. 535, 7 Sup. Ct. 1234, 30 L. Ed. 1000; *Frick Coke & Coal Co. v. Mt. Pleasant Township,* 222 Pa. 451, 71 Atl. 930; *Wheeling Bridge & T. Ry. Co. v. Paull,* 39 W. Va. 142, 19 S. E. 551; *Charleston*

& So. Bridge Co. v. Kanawha County Court, 41 W. Va. 658, 24 S. E. 1102; Pittsburg, etc., Ry. Co. v. Board of Public Works of W. Va., 172 U. S. 32, 19 Sup. Ct. 90, 43 L. Ed. 354; Upshur County v. Rich, 135 U. S. 467, 10 Sup. Ct. 651, 34 L. Ed. 196; Milwaukee Iron Co. et al. v. Schubel, Town Clerk, 29 Wis. 444, 9 Am. Rep. 591.

The proviso of section 1, supra, to wit: "That no matter shall be reviewed on appeal which was not presented to the board appealed from; and provided further, that every appeal shall state specifically the objections of the assessment and the relief sought"—appears to confine the issues on appeal to the same issues as were presented to the Board of Equalization. The question arises as to what matters were presented to the board appealed from.

Section 5, art. 4, c. 38, p. 589, Session Laws 1909, provides:

"Every transmission company doing business in this state shall return sworn lists of (or) schedules of its taxable property to the Auditor of the state and such property shall be listed and assessed with reference to the amount, kind and value thereof, on the first day of February in the year in which it is listed, and such schedules shall show the total length of line in each county; township, school district or other subdivision of the state, total number of wires to each line and total number of poles per mile, the total number of instruments in each municipal subdivision, the total amount of office furniture and the total amount of tools and material, the total amount of other property, including money, and the location thereof."

Section 13 of the same act provides:

"The returns of public service corporations made under the provisions of this act shall not be conclusive as to the value of the amount of said property, but the State Board of Equalization shall make an assessment of such property at its fair cash value, estimated at the price it would bring at a fair voluntary sale. Said board shall have power to examine the books, records and papers and files of any public service corporation doing business in this state, for the purpose of ascertaining the quantity and true value of its property subject to taxation, and to compel the attendance of witnesses and the production of books and papers; and any official agent, employee of any such public service corporation, or any other person who shall fail or refuse to testify

or produce evidence or who shall fail to permit an examination of the books, records and files of any such corporation in his custody or under his control, or who shall fail and refuse to answer such questions as may be put to him by said board or any officer thereof, touching the business, property, effects and assets of any such corporation, shall be deemed guilty of a misdemeanor, and upon conviction thereof before any court of competent jurisdiction may be punished by a fine of not more than $500 or by imprisonment in the county jail for not more than (1) year, or by both such fine and imprisonment. Any such official, agent, employee or other person who shall knowingly make false answer to any question put to him by said board, or by any member thereof, touching any of the business, assets and effects of such ·public service corporation or the value thereof, and who shall make or present any false affidavit concerning any schedule, statement or return furnished or required to be made under the provisions of this act, shall be guilty of perjury, and it shall be the duty of the Attorney General to prosecute all violations of this act."

It is not necessary to determine as to whether, had the act provided that the appeal should be tried under the evidence heard by the Equalization Board, it ·would be valid, for it does not so provide, and it is not so contended by the Attorney General. The presumption is that, had the Legislature so intended, it would have so expressly indicated. There is no provision in said act for the preserving of the evidence heard by the Equalization Board, and the certifying of the same up. Such not having been done, the presumption is that it was the intention of the Legislature that the matter should be tried *de novo* on the issues as presented in the record before the Equalization Board. We therefore conclude, under a fair construction of this act, that the appeal is properly before this court, to be tried under the issues on matters as presented to the Equalization Board, and that evidence may be introduced by all parties in interest on this hearing.

The motion of the plaintiff in error for the appointment of a referee is sustained. The motion of the defendant in error to dismiss the appeal is overruled.

All the Justices concur.