In re Assessment of Western Union Telegraph Co., 1911, 1912.

## *In re* ASSESSMENT OF WESTERN UNION TELEGRAPH CO., 1911, 1912.

Nos. 2016 and 3067.    Opinion Filed October 29, 1912.

Rehearing Denied March 10, 1913.

(130 Pac. 565.)

1.    **TAXATION—Assessment—Board of Equalization—Review of Decisions.**  In a case pending in the Supreme Court on an appeal from the action of the State Board of Equalization in assessing the property of an interstate corporation for taxation, wherein a referee is appointed to take the evidence and make findings of fact and conclusions of law, the court, after the referee makes his report containing the evidence taken before him, in which there is no conflict on any material point, is at liberty to set aside the findings and conclusions of the referee, if erroneous, and substitute therefor findings and conclusions of its own based on the same evidence.

2.    **SAME—Property of Corporation—Telegraph Company.**  In a proceeding for the purpose of ascertaining the value of the property of an interstate telegraph company for the purpose of taxation, in the absence of evidence to the contrary, the presumption is that any natural depreciations in the value of its instrumentalities are provided for by replacements paid for out of the net earnings of the company, and that the plant of the company as a whole is always kept in an ordinary state of efficiency.

3.    **SAME.**  In estimating, for purposes of taxation, the value of the property of an interstate telegraph company situate within a state, it may be regarded not abstractly or strictly locally, but as a part of a system operated in other states, and the taxing state is not precluded from taxing the property because it did not create the company or confer a franchise upon it, or because the company derived rights or privileges under an act of Congress, or because it is engaged in interstate commerce.

4.    **SAME.**  In the absence of evidence to the contrary, the presumption is that all the property of an interstate telegraph company is part of its corporate plant, and that its tangible and intangible property are equally distributed throughout its mileage.

5.    **SAME—Assessment—Nature of Proceeding.**  The valuation of property for taxation is in its nature a judicial act, and, in a proceeding for that purpose wherein the value of corporate property is in dispute, the judgment rendered must be based upon competent evidence, weighed in a judicial manner.

(Syllabus by the Court.)

*Appeal from State Board of Equalization.*

Assessment of the property of the Western Union Telegraph Company for the fiscal years ending June 30, 1911, and June 30, 1912, respectively. From the assessment levied by the State Board of Equalization, the Telegraph Company appeals. Affirmed.

*Cottingham & Bledsoe (Geo. H. Fearons* and *Francis N. Whitney,* of counsel), for appellant.

*Charles West,* Atty. Gen., and *W. C. Reeves,* Asst. Atty. Gen., for the State.

KANE, J. The foregoing proceedings are appeals by the Western Union Telegraph Company from the action of the State Board of Equalization in assessing its property for taxation for the fiscal years ending June 30, 1911, and June 30, 1912, respectively. In a former opinion upon a motion to dismiss these proceedings, the jurisdiction of this court to entertain appeals from the action of the State Board of Equalization in assessing for taxation the property of corporations was upheld, and a motion for the appointment of a referee to take evidence on the trial in the Supreme Court was sustained. *In re Assessment of Western Union Telegraph Co.,* 29 Okla. 483, 118 Pac. 376. The cases now come on to be heard upon exceptions to the report of the referee filed by the Attorney General on behalf of the state. In appointing the referee, the court directed him to make findings of fact and conclusions of law upon all the issues involved.

The only question involved relates to the valuation placed upon the property of the company by the Board of Equalization for the purpose of taxation. Section 8, art. 10, of the Constitution, provides that all property which may be taxed *ad valorem* shall be assessed at a price it would bring at a fair, voluntary sale; and section 7585, Comp. Laws 1909, provides that the property of all public service corporations shall be assessed annually by the State Board of Equalization in the manner prescribed in this act. The state board found the cash value of the company's property to be $1,235,730 for the year ending June 30, 1911, and

$1,450,684 for the year ending June 30, 1912, instead of the much lower valuations shown by returns made by the company. The referee "recommends that the assessed valuation of the Western Union Telegraph Company for the fiscal year ending June 30, 1911, should be $411,910.05, and for the fiscal year ending June 30, 1912, should be $414,481.25." The valuations found by the referee approximate those returned by the company, and are based upon "the price the physical property of the company would bring at a fair, voluntary sale, aside from any intangible value gained by its being a part of a system extending into and through other states and countries." The items making up these aggregates are so many miles of pole lines, worth so much; so many miles of iron wire, worth so much; so many miles of copper wire, worth so much; instruments valued at so much, and office furniture, valued at so much, from which total 50 per cent. of the original cost was deducted for depreciation. The referee seems also to have been influenced in reaching his conclusion by the fact that the Corporation Commission in a controversy between the Western Union Telegraph Company and the state with respect to the rates charged by it for transmitting messages fixed the value of its property for the year 1908 for rate making purposes at approximately the same figure. In one of his findings he "concludes as a matter of law that the valuation of property for the purpose of rate making within the state, and the valuation of property for the purposes of taxation should be one and the same." There is no conflict in the evidence on any material point, the only controversy arising out of the method of computation adopted by the referee in reaching his conclusion.

The Attorney General denies that the state in exercising its taxing power is limited to assessing the material things used by the Western Union Telegraph Company, or that it is required to regard them as of no greater value than they had when reposing in the lumber yards and factories with cost added for putting them in place. He contends that the property of the company within this state ought to be assessed for taxation at such value as it has as an organic portion of a larger whole regarded not abstractly or locally, but as part of a system operating in prac-

tically every state in the Union; that it was error to value the property of the company merely as a congeries of unrelated items, without augmentation of value from the business in which it is employed, and to refuse to value it in its organic relations, "that is to say, not as so many poles, so much wire, so many instruments, or so much other property in the abstract, but valued in the concrete, in the relation that such property in the abstract bore to other property in the abstract which being brought into relation to each other. into a system, located partly in this state and partly in other states, giving each part a concrete value, which is much greater than its abstract value."

The court is of the opinion that the conclusions of the referee cannot be sustained, and they are, therefore, set aside, and, as there is no conflict in the evidence adduced before him, the court examines the same, and bases its findings and conclusions herein thereon. In the first place, it was error to base the value of the company's property within the state upon what it would bring at a fair, voluntary sale, aside from any intangible value gained by its being a part of a system extending into and through other states and countries; and in the second place, we can find no evidence to justify the conclusion that the physical property of the company has depreciated 50 per cent. of its original cost, and is therefore at this time to be valued at half that figure. The Western Union Telegraph Company pretends to be, and is, a great and highly efficient transmission company, with offices in practically every city, town, or village in every state of the Union. There is nothing to indicate that any part of its property is in a state of decay, or that the efficiency of the company is not as great at the present time as it has been at any time since its organization. It is probably true that its physical instrumentalities depreciate in value from use and the ravages of time, but such depreciations are always provided for by replacements paid for out of net earnings, so that the plant of the company as a whole is always kept up to the ordinary standard of efficiency. In the absence of evidence to the contrary, we think this is the correct status to give to a company of this kind in attempting to determine the value of its property for the purpose of taxation.

It has been many times held that, "as to railroad, telegraph, express, and sleeping car companies engaged in interstate commerce, their property, in the several states through which their lines or business extend, may be valued as a unit for the purpose of taxation, taking into consideration the uses to which it is put, and all the elements making up aggregate value; and a proportion of the whole, fairly and properly ascertained, as by taking that part of the value of the entire road which is measured by the ratio of its length in the state to its total length, or by taking as the basis of assessment such proportion of the value of the company's entire capital stock as the length of its line in the state bears to the whole length of its lines, may be taxed by the state without violating any federal restrictions." 1 Cooley on Taxation (3d Ed.) 163; *Western Union Telegraph Company. v. Atty. Gen. of Mass.*, 125 U. S. 530, 8 Sup. Ct. 961, 31 L. Ed. 790; *Pullman's Palace Car Co. v. Penn.*, 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613; *Atty. Gen. v. Western. U. Tel. Co.*, 141 U. S. 40, 11 Sup. Ct. 889, 35 L. Ed. 628; *Maine v. Grand Trunk R. Co.*, 142 U. S. 217, 12 Sup. Ct. 121, 163, 35 L. Ed. 994; *Pittsburg C., C. & St. L. R. Co. v. Backus*, 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. Ed. 1031; *Cleveland, C., C. & St. L. R. Co. v. Backus*, 154 U. S. 439, 14 Sup. Ct. 1122, 38 L. Ed. 1041; *Western U. Tel. Co. v. Taggart*, 163 U. S. 1, 16 Sup. Ct. 1054, 41 L. Ed. 49; *Adams Exp. Co. v. Ohio St. Auditor*, 165 U. S. 194, 17 Sup. Ct. 305, 41 L. Ed. 683; *Id.*, 166 U. S. 185, 17 Sup. Ct. 604, 41 L. Ed. 965; *Adams Exp. Co. v. Ky.*, 166 U. S. 171, 17 Sup. Ct. 527, 41 L. Ed. 960; *Pullman's Palace Car Co. v. Twombly* (C. C.) 29 Fed. 658; *Atty. Gen. v. Western U. Tel. Co.* (C. C.) 33 Fed. 129; *Pullman's Palace Car Co. v. Board of Assessors* (C. C.) 55 Fed. 206; *Board of Assessors v. Pullman's Palace Car Co.*, 60 Fed. 37, 8 C. C. A. 490; *Reinhart v. McDonald* (C. C.) 76 Fed. 403; *Wells Fargo & Co. Exp. Co. v. Crawford County*, 63 Ark. 576, 40 S. W. 710, 37 L. R. A. 371; *Cleveland, C., C. & St. L. R. Co. v. Backus*, 133 Ind. 513, 33 N. E. 421, 18 L. R. A. 729; *Pittsburg, C., C. & St. L. R. Co. v. Backus*, 133 Ind. 625, 33 N. E. 432; *Evansville & I. R. Co. v. West*, 138 Ind. 697, 37 N. E. 1012; *Western U. Tel. Co. v. Taggart*, 141 Ind. 281, 40

N. E. 1051, 60 L. R. A. 671; *State v. Adams Exp. Co.,* 144 Ind. 549, 42 N. E. 483; *State v. Jones,* 51 Ohio St. 492, 37 N. E. 945; *Pullman's Palace Car Co. v. Commonwealth,* 107 Pa. 156.

Indeed, the method outlined by Mr. Cooley seems to be the plan generally adopted by the states for the ascertainment of the value of corporate property for the purpose of taxation, and from the numerous authorities we have had occasion to examine we find no precedent supporting the method adopted by the referee in the instant cases.

The case of *Western U. Tel. Co. v. Taggart, supra,* was appealed to the Supreme Court of the United States. *Western U. Tel. Co. v. Taggart,* 163 U. S. 1, 16 Sup. Ct. 1054, 41 L. Ed. 49. In that court Mr. Justice Gray, after quoting exhaustively from *Railroad Co. v. Backus,* 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. Ed. 1031, which involved the taxation of the property of an interstate railroad running through two or more states, says:

" 'All that is thus forcibly and convincingly said as to the taxation of interstate railroad property is equally applicable to the taxation of interstate property. It is not easy to see how one mile of appellant's telegraph line connecting Chicago with New York could be of less value than any other mile of the same line. Cut out one mile, even though it be through a swamp or under a lake, and the value of the whole line is practically destroyed. The property is a unit, valuable as a whole and by reason of its several connections, and not by virtue of any part taken by itself. No way, therefore, by which the value of the lines in this state can be determined, seems so just and equitable as to take that proportion of the whole value which the mileage in this state bears to the whole mileage.' "

*Western U. Tel. Co. v. Gottlieb,* 190 U. S. 412, 23 Sup. Ct. 730, 47 L. Ed. 1116, is another case wherein the proper method of determining the value of the property of the same telegraph company for the purpose of taxation was under discussion. The case originated in the circuit court of Jackson county, Mo., and the trial court followed the same plan followed by the referee in this case in that it regarded the poles, wires, and other physical property of the company in Missouri as though it was in no way used in the business of the company as part of a unit. Criticising this method, Mr. Justice McKenna, says:

"The necessary consequence was and is to destroy the relations between that franchise and other properties of the plaintiff in error, regarding them not as parts of the system, but abstractly regarding the poles not differently from other poles, the wire not differently from other wire."

Speaking of the action of the Supreme Court of the state which reversed the trial court, the learned Justice says:

"The Supreme Court, on the contrary, regarded the properties as related and as constituting a system, and because of this relation having a value greater than the sum of values of the individual things regarded merely as such. Viewing the order of the Board of Equalization as the Supreme Court viewed it, was it valid? In other words, is the state in exercising its taxing power limited to assessing the mere material things used by the plaintiff in error, and must it regard them of no greater value than they had when they reposed in lumber yards and factories, with cost added for putting them in place? Or the proposition may be stated another way, which better expresses the ultimate contention of the plaintiff in error. Conceding that the tangible property of the telegraph company derives value from its use in a system, does the company do business in the state in pursuance of the Constitution of the United States and the Act of July 24, 1866 [c. 230, 14 St. at L. 221 (U. S. Comp. St. 1901, p. 3579)], and become thereby an instrument of interstate commerce and a government agent, and as such exempt from the taxation contested in this case?"

The conclusion of the court is stated in the syllabus as follows:

"In estimating, for purposes of taxation, the value of the property of a telegraph company situate within a state, it may be regarded not abstractly or strictly locally, but as a part of a system operated in other states, and the taxing state is not precluded from taxing the property because it did not create the company or confer a franchise upon it, or because the company derived rights or privileges under the Act of Congress of 1866, or because it is engaged in interstate commerce."

This mode of division has been recognized by the Supreme Court of the United States several times as eminently fair. And the same great court is authority for the statement that a division of the values of the entire property upon a mileage basis is the general answer to the question, How can equity be secured between the states in the matter of taxation of the property of trans-

portation and transmission companies engaged in interstate commerce? And that taxing a mileage share of such property lying within the control or jurisdiction of each state is not taxing property outside of the state. *Railroad Co. v. Backus,* 154 U. S. 421, 14 Sup. Ct. 1114, 38 L. Ed. 1031. The case of *Fargo v. Hart,* 193 U. S. 490, 24 Sup. Ct. 498, 48 L. Ed. 761, has sometimes been erroneously regarded as containing a complete reversal of this rule. Counsel for appellant cite it to support their contention that inasmuch as the evidence shows that certain property of the company, such as real estate, personal property, etc., which goes to make up the aggregate assets of the company, has a *situs* outside the state, that the aggregate of this sum should be deducted from the total assets, and not considered in determining the value of the property of the company within the state. We do not believe that this contention is correct, or that it is supported by the case cited. As was said by Mr. Justice Jaggard in *State v. Western U. Tel. Co.,* 96 Minn. 13, 104 N. W. 567:

"The limitation that case contains is that a tax on an express company of another state proportioned to mileage is bad when it appears that the total valuation is made up principally from real and personal property not necessarily used in the actual business of the company, and which is permanently located in the state where the company is incorporated. The general principle remains untouched and unassailed, namely, that 'a state may tax property, not the privilege of doing business, so as to reach the intangible value due to * * * the organic relation of the property in the state to the whole system.'"

While it may be fairly inferred from the evidence that the specific property mentioned above is not actually within the state of Oklahoma, there is no evidence tending to show that it is of exceptional value, or that it and all the other property of the company having a *situs* outside this state are not necessary for the transaction of its business, or that it is not used in connection with and in relation to its property in Oklahoma for the main or general purpose of carrying on such business. It has been held, and correctly we think, that:

"Evidence of the value of property not necessary for railroad purposes, and that parts of the corporate plant of a railroad company, including its various terminals, are of exceptional val-

ue, is competent, and, when offered, must be given effect by the assessing board and by the court in ascertaining the value of its corporate plant in the state. But, in the absence of such evidence, the presumption is that all its property is part of its corporate plant, and that its tangible and intangible property are equally distributed throughout its mileage." (*A., T. & S. F. Ry. Co. v. Sullivan,* 173 Fed. 456, 97 C. C. A. 1.)

In another case, wherein the question of valuing corporate property for rate making purposes was under discussion, the same court, speaking through Hook, Circuit Judge, says:

"Distant connections with important commercial centers, an outlet to tidewater and the like, may affect favorably the worth of every mile of road in the system. It is general knowledge that there is an important element of value in a railroad as a whole which the part within the state, solely and separately regarded, does not possess. While the question ultimately is the value of the road within the state, the influence upon that value of things external is to be considered; and in the common judgment of men it is to some extent reflected in the amount and value of the stocks and bonds resting upon the system. Nor can it properly be said that such influence affects only the value for the interstate business of the company with which the state is not concerned in making local rates. There is too intimate a relation between commerce within the state and that among the states, and too much interdependence in their mutual growth and prosperity. A railroad system is essentially a unit and is generally so regarded. For instance, the part within the state may be assessed for local taxation at its value as an organic portion of a larger whole."

There is nothing in the record to indicate that the state board attempted to tax the property of the company outside the state, and this court gives weight to the evidence tending to show the value of its tangible or intangible property without the state, only in so far as it may have a bearing upon the ascertainment of the value of that part of its corporate plant which lies within the state.

If we adopt, then, the unit system as a guide in determining the value of the company's property within the state, we find from the evidence that its cash value is much greater than that placed upon it by the State Board of Equalization. The record, however, discloses some facts which may be properly taken into

consideration that reasonably tend to show that the property of the company in Oklahoma is not of a fair average value. For instance: The evidence shows that the receipts of the company in Oklahoma constitute .89 of one per cent. of the entire receipts of the whole system. If the property of the company is divided upon the basis of its ability to produce income from business properly attributable to this state, we find that .89 of one per cent. of the whole receipts produces a value of the property within the state slightly in excess of that found by the state board. Looking at the evidence from another viewpoint, we find that the average earnings per mile of wire for the entire system is $23.71; while the Oklahoma wire mileage is only $16.63 per mile. The receipts for Oklahoma per mile are therefore only 70 per cent. of the average receipts of the whole system. The evidence shows that the property in Oklahoma is 1.26 per cent. of the entire wire mileage. As stated before, upon a strictly unit basis, this would make a value much in excess of that placed upon it by the state board. But, as it is also disclosed by the evidence that the Oklahoma mileage produces only 70 per cent. of the average receipts per mile, based upon a wire mileage basis, the state board may have properly concluded that the property of the company in this state should only be assessed in the proportion that the receipts per mile in Oklahoma bear to the average receipts of the entire system. Figuring upon that basis, we find that the actual value of the property is still slightly in excess of that found by the state board. The foregoing and other facts of the same nature have been considered and given weight by the court, and no doubt the state board was also influenced by them. On the whole we are convinced that the state board valued the property of the company according to its best judgment, with honest purpose, and that it reached as near a correct conclusion as it is possible to attain in matters of this kind. At any rate, applying any of the methods approved by the courts for determining the value of property of this class for the purpose of taxation, the evidence before us shows that the values found by the board for the respective years are approximately correct. We therefore adopt

their findings in each case, and make them a part of the judgment of this court.

The referee made findings based upon the unit system which do not substantially differ from the values found by the court, but he also found that such values "are arrived at by an arbitrary distribution of values upon the proportionate wire mileage basis without regard to the actual value of the property other than the wires; without regard to its location, whether within or without the state, and without regard to the fact that the business in the state is conducted at a loss, and the business as a whole is conducted at a profit." It is apparent that the findings made under such circumstances do not form a sufficient basis to support a judicial determination, and they are therefore set aside, and the findings and conclusions of the court substituted therefor. The valuation of property for taxation is in its nature a judicial act. 2 Cooley on Taxation (3d Ed.) 751. And in a proceeding for that purpose wherein the value of corporate property is in dispute the judgment rendered must be based upon competent evidence, weighed in a judicial manner. There is nothing in the record tending to show that the part of this system situated in Oklahoma is not of a fair average value, or that the line is not substantially of the same value throughout, except the circumstances hereinbefore mentioned, and to which we have given due weight in reaching our conclusion.

On the question of the weight to be given to the findings of the Corporation Commission in fixing the value of the property of this company for rate-making purposes, we cannot agree with the referee. Without noticing important distinctions between the two classes of proceedings which appear to us, it is sufficient to say that the valuation fixed by the commission was for the year 1908, whilst the valuations involved herein are for the years 1911 and 1912, respectively.

"As a general rule, each annual assessment of property for taxation is a separate entity, distinct from the assessment for the next and subsequent years. What may be a proper valuation one year may not be the next year, and thus a judgment decreeing at what figure a piece of property should be assessed for purposes of taxation is not *res adjudicata* as against another valuation

placed thereon by the proper authorities this year." (1 Cooley on Taxation [3d Ed.] 758.)

The point is made by counsel for appellant that inasmuch as the officers of the company testified, without contradiction, that the value of the property of the company within the state taken as a part of a unit, with all of the advantages, if any, that attach thereto, was not and is not worth in excess of the amount at which it was returned to the state board for the purpose of taxation, the court should give to this evidence the full credence to which unimpeached evidence is entitled. It is apparent that what the officers say on this point is merely a conclusion drawn from identically the same facts which were laid before the court and the referee. We are satisfied that the referee and the officers of the company were too much influenced by the fundamentally erroneous theory that the physical valuation plan adopted by them is the correct way to ascertain the value of the property of the company in the state, and that they gave undue weight to the evidence touching the earning capacity of the company within the state, and the valuation placed upon its property for rate-making purposes. While we are of the opinion that those are matters which properly may be taken into consideration, the court, after giving them due weight in connection with all the other pertinent facts and circumstances disclosed by the evidence, has reached a different conclusion, and, of course, the court is not permitted to yield its own judgment.

The findings of the state board are therefore affirmed.

All the Justices concur.