*In re* ASSESSMENT OF OSAGE & OKLAHOMA GAS CO.

No. 3106.    Opinion Filed December 3, 1912.

(128 Pac. 692.)

1.    TAXATION—Assessment—Appeal to Supreme Court—Trial De Novo. On appeal from the action of the State Board of Equalization in assessing the property of a public ·service corporation, the issues are confined to those presented to the Board of Equalization; but the trial here is de novo, and evidence may be introduced by both parties; and in doing so they are not confined to the evidence introduced before the Board of Equalization.

2.    SAME—Property of Corporation—Assessment—Equalization. Evidence examined and found sufficient to sustain the report of the referee.

(Syllabus by the Court.)

*Appeal from State Board of Equalization.*

In the matter of the assessment of the property of the Osage & Oklahoma Gas Company for taxation by the State Board of Equalization.    From an order making such assessment, the Gas Company appeals.    From report of referee assessing cash value of the Company's property, the state moves to dismiss.    Report confirmed.

*Flynn, Chambers, Lowe & Richardson,* for Osage & Oklahoma Gas Co.

*Chas. West,* Atty. Gen., and *W. C. Reeves,* Asst. Atty. Gen., for the State.

HAYES, J.    This is an appeal by the Osage & Oklahoma Gas Company, a corporation, hereinafter referred to as the company, from an action of the State Board of Equalization taken on the 2d day of August, 1911, assessing the property of the company for taxation for the year 1911 at $973,472.    At the trial in this court, which was *de novo,* the cause was referred to a referee, agreed upon and selected by the parties, to hear the evidence and report his findings of fact thereon, which he has done, and the cause is now before us upon the motion of the company to confirm the

report of the referee and upon the motion of the state to dismiss the appeal and upon its objections and exceptions to the referee's report.

On the 17th day of April, 1911, the company filed with the State Auditor, as it is required by statute to do, its annual return, upon which the State Board of Equalization, on the 16th day of May, 1911, made a tentative assessment of its property for taxation for said year in the sum of $973,472. To this assessment the company made objections and was granted a hearing before the State Board of Equalization on the 28th day of June, 1911; after which hearing, the board overruled all of its objections and adhered to its former assessment. From this order of the board this proceeding is prosecuted.

The sole and only question involved in the appeal, from the standpoint of the company, is the value of the property belonging to the company subject to taxation in this state for the year 1911. In making up its annual return to the State Auditor, the company listed therein only its physical properties for taxation and did not include its bills receivable, cash on hand, or its intangible property, such as franchises, contracts for the sale of gas, or gas lease contracts. The State Board of Equalization, in arriving at the value of the company's property and assessing it for taxation, took into consideration these items of property owned by the company which had been omitted from its annual report. At the hearing before the State Board of Equalization and at the trial in this court it is admitted by the officers of the company that it has a bills receivable account, cash on hands, and franchises of value. It is insisted by the Attorney General on behalf of the state that under the statute (section 1, c. 87, Sess. Laws, 1910), which provides that no matter shall be reviewed on appeal which was not presented to the board appealed from, the company cannot now complain of the increased valuation at which the State Board of Equalization has assessed its property over the amount returned by the company in its annual return, because some of the items of property considered by the board in making up that assessed valuation consist of property not listed in the

In re Assessment of Osage & Oklahoma Gas Co.

return, and for that reason the appeal should be dismissed. We do not understand such to be the effect of the statute, which was considered and construed in *Re Western Union Telegraph Co.* 29 Okla. 483, 118 Pac 376. In that case it was held that an appeal lies to this court from the action of the State Board of Equalization in assessing property; that under the foregoing statute the issues on appeal are confined to those presented to the Board of Equalization; but that the trial here is *de novo,* and the evidence may be introduced by both parties, and in doing so they are not confined to the evidence introduced before the state board. The State Board of Equalization did not assess the company's property by separate items, but made its assessment thereof in an aggregate amount, including in such assessment all the items not so returned. At the hearing on the tentative assessment of the board, evidence was heard on the value of the entire property. The objection made to the assessment by the company was as to the aggregate assessment, and the evidence introduced was all for the purpose of showing that the aggregate sum at which the property of the company had been assessed was excessive. Upon such an issue any evidence that tended to show the real value of the property of the company was competent and could be introduced either by the company or by the state at the hearing before the State Board of Equalization, and is likewise competent on appeal before this court. The question of fact the company now seeks to have determined is the same issue that was considered at the hearing before the board, and the cause should not be dismissed.

The referee in his report finds the fair cash value of the company's property to be $400,000. At the hearing before the referee the evidence introduced consisted of two witnesses, who are the secretary and treasurer and the general manager of the company, respectively, and both of whom testified on behalf of the company. The state introduced no evidence whatever. By the evidence of these witnesses it is established that the company is a corporation, organized under the laws of the state of Delaware in 1905, but that all the property owned by it is located in this state. It has an authorized capital of $1,500,000, of which

$450,000 has been paid in. All of its properties were originally bought by it from two certain persons for the sum of $450,000 in cash, and $8,000 credit secured by a first mortgage on the properties of the company. The money required to pay the cash consideration was derived from a sale of stock at $36 per share, the par value of which was $100 per share. The original property included oil and gas leases on large tracts of lands in the Osage Nation and the business of oil production of about 2,000 barrels per day, and a gas business consisting of a small plant in Tulsa with about 500 consumers. After doing considerable drilling for oil throughout the territory upon which it had leases, the company, in February, 1906, sold all of its oil leases and the oil production of its wells and equipment, including everything pertaining to its oil business, for a consideration of $450,000 in cash and the assumption by the purchaser of the $8,000 indebtedness incurred as a part of the original purchase price by the company. A special dividend out of the proceeds of this sale in the sum of $30 per share was paid to the stockholders, leaving $90,000 of the original investment of the company still invested in its properties. After this sale the properties of the company consisted of its gas franchise in the city of Tulsa, a gas plant operated in said city and some of its suburbs, together with a pipe line leading from the gas fields to the city, and gas leases and gas rights in certain tracts of land. Its gas plant has from time to time been enlarged, repaired, and improved; but the total value of the physical property of the company cannot be ascertained by adding to the original cost thereof the sums of money that have been subsequently expended upon the plant, for the reason that much of the original plant has been taken out and rebuilt, such as the old pipe lines in the streets, which were replaced as the city has grown and its streets were paved, and some of the property taken out was an entire loss. The testimony of the secretary and treasurer of the company is that on February 1, 1911, the fair cash value of the company's pipe lines, distributing plant, and their accessories which compose the physical properties of the company was $139,067.53, and this testimony stands uncontradicted and unimpeached. On the same date the appellant had $18,997.47 in cash,

and accounts receivable in the sum of $22,557.23.   The same witness testified that its franchise for distributing gas to the consumers in the city of Tulsa was of the value of $25,000, and was carried upon the books of the company at that sum.   The foregoing items make up an aggregate sum of $205,622.23.   In addition to the foregoing property, however, the company owns some gas lease contracts in undeveloped fields which expire in 1916, and has contracts with certain gas companies to furnish them gas at stipulated prices.   There is no evidence in the record as to the valuation of these separate items of property, but the secretary and treasurer stated that he regarded the value of the entire property of the company, including gas leases and all the company's contracts and its franchises, to be $400,000.

The foregoing, in substance, constitutes all the evidence introduced at the hearing before the referee, except that it is shown that during the year ending June 30, 1910, the company made a net earning of $65,911.41, which is equivalent to six per cent. upon a valuation of approximately $1,098,532.   Upon this fact, principally, it is stated by the Attorney General the valuation of the State Board should be sustained.   The earning capacity of property may be considered in arriving at its fair value, but its value cannot be determined by that circumstance alone.   It would be a very unreliable method to select any given year and determine the value of any given piece of property by the dividends earned that year; for some years are more productive of profits than others in almost all lines of business, and, if a fruitful year should be selected, a valuation based upon such estimate would probably far exceed the real value of the property.   On the other hand, if a poor year were selected, a sum much less than the real value would result.   There is no evidence tending to show what the annual earnings of the company from its plant have been, nor its franchise to furnish gas to the residents of the city of Tulsa, but is engaged in competition with another company operating under a similar franchise, and its present franchise expires in 1928 and limits the company in the right it grants to it to furnish natural probable earnings in the future.   It does not own an exclusive gas only.   Taking into consideration all these facts and the cir-

cumstances that the state has not offered any evidence whatever to contradict the evidence offered in behalf of the company, we are of the opinion that the report of the referee as to the total taxable value of appellant's property is amply sustained by the evidence and should not be disturbed.

The order of this court is that the report of the referee be confirmed, and judgment entered accordingly.

TURNER, C. J., and WILLIAMS and KANE, JJ., concur; DUNN, J., not participating.