## In re OKLAHOMA GAS & ELECTRIC CO.

Nos. 7714, 8393, 9203—Opinion Filed Feb. 12, 1918.

(171 Pac. 26.)

(Syllabus.)

1. **Taxation — Equalization — Appeal — Presumption.**

On appeal from the state board of equalization, in the absence of affirmative showing that an erroneous method of valuation was used, or that values not properly assessable were taken into consideration, the presumption is that the action of the board of equalization is correct.

2. **Taxation — Gas and Electric Plant — Depreciation and Replacement — Presumption.**

In a proceeding for the purpose of assessing the property of a gas and electric company for the purpose of taxation, in the absence of evidence to the contrary, the presumption is that any natural depreciation in the value of its instrumentalities is provided for by replacements paid for out of the net earnings of the company, and that the plant of the company is always kept in an ordinary state of efficiency.

3. **Taxation — Uniformity — Discrimination —Value of Franchises of Gas and Electric Company.**

The consideration of the values represented by franchises held by a gas and electric company in determining the taxable value of the property owned by it does not violate the uniformity clause of the state Constitution, nor constitute an unjust discrimination against such company.

4. **Taxation — Valuation of Property — Earning Capacity.**

The earning capacity of property may be considered in arriving at its fair value, but its value cannot be determined by that cirsumstance alone.

Appeal from State Board of Equalization.

The Oklahoma Gas & Electric Company appeals from the assessment of its property for taxation by the Board of Equalization. Affirmed.

Paul Reiss, for appellant.

S. P. Freeling, Atty. Gen., and Jno. B. Harrison and Hunter L. Johnson, Asst. Attys. Gen., for appellees.

HARDY, J. From the assessment of its property for taxation for the years 1915, 1916 and 1917 by the state board of equalization, the Oklahoma Gas & Electric Company appeals. The evidence consists of various reports made by it to the state board of equalization and to the Corporation Commission and certain other documentary evidence. The value placed upon its property by appellant for the purposes of taxation for the year 1915 was $1,462,901, 1916, $1,866,000, and for 1917, $1,947,000, which values were arrived at by taking the total, naked, original cost of construction of its plant, based upon the cost of the different items such as posts, wires, etc., and deducting therefrom 5 per cent. of such original cost per annum for depreciation. This amount did not include the value of gas

and electric franchises owned by it, nor was it intended to represent the aggregate cash value of all of its property as a going concern. In the return made to the state board of equalization for 1915, the total assets as of February 1, 1917, are stated to be $6,111,-987.59, 1916, $6,210,539.59, and for 1917, $6,-516,766.08, which includes unsold bonds in the sum of $75,000 and gas and electric franchises valued at $3,610,145.13.

Appellant's property was assessed for taxation for the year 1915 by the state board of equalization at $2,500,000, 1916 at $2,500,-000, and for 1917 at $2,825,000, which values appellant claims are largely in excess of the taxable value of its property. And it further contends that such valuations work a discrimination between appellant and other public service corporations and individuals owning similar property. In support of this position it is urged that the board of equalization erred in taking into consideration the value of franchises owned by appellant, and also erred in the method by which it arrived at the valuation fixed. The record does not disclose the method by which the value of appellant's property was determined, and, in the absence of a showing that an erroneous method of calculation was used, or that values not properly assessable were taken into consideration, the presumption is that the proper method was used. Lusk v. Porter, 53 Okla. 294, 156 Pac. 224; Board Com'rs v. Field, 63 Okla. 80, 162 Pac. 733.

The question then would be whether the result arrived at is erroneous. The total assets as of February 1, 1917, amounted to $6,516,766.08, and if from this amount be deducted the amount of unsold bonds and the value of franchises as before stated, and accounts payable in the sum of $97,770.17, there would remain physical, tangible property of the value of $3,286,350.78, in addition to which there is in the hands of the trustee of appellant's bondholders the sum of $471,-981.17, deposited from current revenue as a reserve fund to take care of renewals and replacements and to maintain the value of the security of the mortgage on the plant. The figures for 1915 and 1916 are essentially the same, with small variations in amounts of income, expenditures, accounts receivable, accounts payable, and cash on hand. If no deductions be permitted for depreciation, the actual value of appellant's tangible property is largely in excess of the sum fixed by the board of equalization. There was no evidence of depreciation, and it will be presumed that depreciation has been cared for out of current operating expenses, and de-

ductions therefor should not be permitted. Re Assessment of Western Union Tel. Co., 35 Okla. 626, 130 Pac. 565.

In addition to this presumption, the record affirmatively shows that depreciation has been cared for out of current operating expenses, and by a reserve fund created especially for that purpose. If, however, deductions therefor be permitted, the result would not be different, because it was proper for the board of equalization, in fixing the value of appellant's property, to take into consideration the value of franchises owned by it, and said board was required to fix the aggregate value of all of appellant's property for the purpose of taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale. Article 10, § 8, Const.

By section 7302, Rev. Laws 1910, it is provided that all property of corporations, banks and bankers, except such as is exempt, shall be subject to taxation, and by section 7343, every gas, light, heat, and power company is required to return annually to the state auditor sworn statements of its property, including a statement of franchises held by such company from any municipal corporation, showing the length of time same is to run and the conditions under which they were granted, and section 7344 requires all electric light and power companies, among other things, to show in the return made by them to the state auditor all contracts between such corporation and any municipal corporation of the state and the amount of revenue derived therefrom and all franchises owned or held by such company. These provisions evidence beyond controversy the legislative intent to consider franchises held by corporations such as appellant in determining the value of its property for the purpose of taxation. Aside from the statutes specifically requiring such information to be returned, the Constitution expressly declares that no property shall be exempt from taxation except as provided therein. Section 50, art. 5, Const.

It would be a manifest injustice to permit the enormous values represented by municipal franchises to escape a just proportion of the burdens of taxation. Such franchises are property, and often possess great value and produce large incomes, and are as properly subjects of taxation as any other species of property, and the taxation thereof is within the legitimate exercise of the taxing power of the state. Veazie Bank v. Fenno, 8 Wall. (75 U. S.) 533, 19 L. Ed. 482; Taylor v. Secor, 92 U. S. 575, 23 L. Ed. 663; New

Orleans City & Lake R. Co. v. New Orleans, 143 U. S. 192, 12 Sup. Ct. 406, 36 L. Ed. 121.

And the consideration of intangible values represented by such franchises in determining the taxable value of appellant's property does not violate the provisions of the Constitution requiring uniformity of taxation, nor does it constitute an unjust discrimination between property owned by individuals and that owned by corporations. While the Constitution requires taxation in general to be uniform and equal, this provision is not violated, nor is any unjust discrimination made between individuals and corporations, if a different mode of taxation is adopted as between individuals and corporations or between corporations of different classes. The Constitution authorizes the classification of property for the purposes of taxation and the valuation of different classes by different methods. Article 10, § 8, Const.; Taylor v. Secor, supra; Pac. Ex. Co. v. Seibert, 142 U. S. 339, 12 Sup. Ct. 250, 35 L. Ed. 1035; Adams Ex. Co. v. Ky., 166 U. S. 171, 17 Sup. Ct. 527, 41 L. Ed. 960.

And it would not be error for the board of equalization to take into consideration the income and revenue derived by appellant from the operation of its plant in determining its fair cash value. Whatever property is worth for the purposes of income and sale, it is also worth for the purposes of taxation. Re Ind. Ter. Illuminating Oil Co., 43 Okla. 307, 142 Pac. 997; Adams Express Co. v. Ohio State Auditor, supra, 165 U. S. 194, 17 Sup. Ct. 305, 41 L. Ed. 683.

The standard fixed by the Constitution in determining the taxable value of property is that it shall be assessed at its fair cash value, estimated at the price it would bring at a fair voluntary sale, and whenever separate articles of property such as that owned by appellant are joined together in unity of ownership and unity of use, and there has been developed an intangible value, such value must necessarily be considered in arriving at the fair cash value of the property as a whole and as a part of a going concern. In Re Assessment Western Union Tel. Co., supra; Adams Express Co. v. Ohio State Auditor, supra.

The evidence discloses that there is outstanding capital stock amounting to $2,600,-000, and outstanding bonds to the amount of $2,863,000, which bear interest at the rate of 5 per cent. In addition to paying interest upon these outstanding bonds, the company has been paying a dividend upon its capital stock of 8 per cent., 8½ per cent., and 9½ per cent. and depreciations have been taken

care of out of operating expenses and 5 per cent. of the amount of outstanding bonds has been set aside annually as a reserve fund for the purposes of maintaining the value of the security of the mortgage. The net income for 1917 was $493,000, and after paying interest on bonds, the appropriation to take care of depreciation, and a dividend of 7 per cent. upon its capital stock, there would remain a balance of $111,986.61. Capitalizing this sum at 7 per cent. it would pay a 7 per cent. dividend upon an investment of $1,599,808.70, which, being added to the amount of capital stock and bonded indebtedness, would give a total earning capital value of the entire property of appellants for the purposes of sale of $7,062,808.70 for the year 1917. Another way of demonstrating that the valuation fixed by the board of equalization is not unfair would be to take the value of the tangible, physical property of appellant, to wit, $3,580,492.74, and take the surplus of $111,986.61, after paying interest on bonds, dividends on stock, and depreciation reserve, and capitalizing it at 7 per cent. as before, and adding the value thus obtained to the actual value of the tangible, physical property of $3,580,492.74 would give a sale value of $5,180,301.44, which is even less than the total values returned to the Corporation Commission. A similar calculation for each year will demonstrate that the values fixed are less than the actual value of appellant's property for each respective year. That it is proper in arriving at a fair cash value of property to consider the income and revenues derived therefrom is not open to serious question. Re Assessment of Osage & Oklahoma Gas Co., 35 Okla. 154, 128 Pac. 692. Appellant's property was worth to it in the matter of income and revenue the valuations shown by the foregoing calculations, and there is no doubt of the power of the state to assess it for taxation at that value, for whatever may be the fair cash value of property, that value may be accepted by the state as the basis for taxation, and this value ought not to be evaded by any mere confusion of words or juggling of figures or shifting of accounts. If it be not so taxed, an unjust discrimination arises between property of this character and other property not possessing such values, and, as stated by Mr. Justice Brewer in Adams Express Co. v. Ohio State Auditor, supra—

"accumulated wealth will laugh at the crudity of taxing laws which reach only the one and ignore the other, while they who own tangible property, not organized into a single producing plant, will feel the injustice of a system which so misplaces the burden of taxation."

Appellant uses several methods of illustrating the contention that it is not equally assessed as compared with other corporations of like character in the state. The first comparison is. made with the Oklahoma Railway Company. This. company is not of the same class of corporations as appellant, and the valuation of its property stands upon a different basis. Besides there is no statement in the record of the assets of the railway company nor sufficient evidence upon which a fair comparison can be made. Comparison is also made with the Muskogee Gas & Electric Company and the Enid Electric & Gas Company. There is nothing in the record in this case upon which a fair comparison of the assessments of the two companies can be made. While the appeals of the respective companies have been briefed together and the propositions of law urged are identical, each case is presented in a separate appeal upon its own record. Neither is there sufficient evidence to justify the comparison attempted with other corporations. If such comparisons were justified and a discrepancy appeared between the assessment of appellant and that of the various companies, appellant's assessment would not thereby be rendered illegal, in the absence of a showing that the discrimination was intentional or fraudulent. There is no system of taxation that is perfect, and inequalities and inaccuracies will creep in, but such inequalities, if the result of an honest mistake, and not based upon some fundamentally erroneous theory, will not avoid the assessment. C. B. & Q. R. Co. v. Babcock, 204 U. S. 585, 27 Sup. Ct. 326, 51 L. Ed. 636; 37 Cyc. 736; Cooley on Taxation (3d Ed.) 254-260.

The assessments of Oklahoma county, Muskogee county and Garfield county for the years 1912 to 1916, both inclusive, are relied upon as showing an unjust discrimination against appellant. The total assessment of these counties for the years 1912, 1913, and 1914 are not in the records; neither is there anything to show what part of the total values of either of the counties appellant or any of the other companies own, and this comparison is without merit.

This was an appeal from the assessment made by the state board of equalization under section 3, subd. B, c. 107, Sess. Laws 1915, p. 177, which is the same in substance as section 3, subd. B, art. 1, c. 240, Sess. Laws 1913. Under this section a taxpayer may file a complaint attacking his assessment. which complaint is set for hearing, evidence heard and the complaint acted upon. From an adverse action the taxpayer or the county attorney for the taxpaying public may appeal to this court. and we will examine and review the transcript of the record, and will affirm, modify, or annul the order appealed from as justice may demand.

On an examination and review of the record in this case, it does not appear that any error was committed by the board of equalization in the method by which it arrived at the values fixed, nor that such values are unjust or contrary to the evidence.

The order appealed from is therefore affirmed.

All the Justices concur.