## In re ENID ELECTRIC & GAS CO.

Nos. 7712, 8391—Opinion Filed Feb. 12, 1918.

(171 Pac. 29.)

Appeal from State Board of Equalization.

The Enid Electric & Gas Company appeals from the assessment of its property for taxation. Orders affirmed.

Paul Reiss, for appellant.

S. P. Freeling, Atty. Gen., Jno. B. Harrison and Hunter L. Johnson, Asst. Attys. Gen., for appellees.

HARDY, J. From the assessment of its property for taxation for the years 1915 and 1916, the Enid Electric & Gas Company appeal. The facts as to this company are presented in reports, and returns similar to those presented in the record in Re Assessment of the Oklahoma Gas & Electric Company and in Re Assessment of the Muskogee Gas

& Electric Company just decided. The appellant returned its property for assessment for 1915 at $223,477 and for 1916 at $206,000. The value as finally fixed by the board of equalization was for 1915 $275,000, and for 1916, $275,000. As in the other cases, the values returned by appellant represent the naked cost of the different items entering into the construction of its plant as organized, and excludes from consideration franchises held by it. From the original cost of construction 5 per cent. per annum for depreciation has been deducted. No showing appears in the record as to depreciation, and the same cannot be allowed. In re Assessment Western Union Tel. Co., 35 Okla. 626, 130 Pac. 565; In re Assessment Oklahoma Gas & Electric Co., 67 Okla. 301, 171 Pac. 26.

It affirmatively appears that depreciation has been taken care of. By the terms of the mortgage securing the bonds of this appellant it is provided that neither the value of the mortgaged property nor the lien of the mortgage will be diminished or impaired in any way as a result of any action or non-action on the part of the company, and the company undertakes to keep in good repair, working order and condition all its property, plant, appliances, system, and equipment, and that it will from time to time make all needed and proper repairs and replacements, and the return affirmatively shows that such has been done. If, notwithstanding the fact that repairs and replacements have been taken care of, depreciation be allowed, a moment's reflection will show that in 20 years the taxable value of the plant will be nothing, and after 20 years, less than nothing, although, so far as its efficiency and earning capacity is concerned, the plant may have been kept up during all these years to its original efficiency. The outstanding paid-up capital stock of appellant for the years in question, was preferred stock $439,300 and common stock $500,000. The outstanding bonds for the same period amounted to $620,000. In its reports made to the state auditor and board of equalization and a general report made to the Corporation Commission in compliance with order No. 774, the total assets for 1915 are shown to be $1,666,589.16 and for 1916, $1,671,773.88. In these totals the separate values of the tangible and intangible assets are not separated. For the same years, the gross revenue was $130,458.62 and $141,248.18, respectively, and the net income $53,032.55 and $58,630.54, respectively. The general report to the Corporation Commission on April 30, 1914, shows the cost of construction to that date to be $689,000, and shows that the ap-

pellant owned franchises which were valued by it at $823,786.11, making a total of $1,513,001.56, which amount did not include the value of certain property discarded. For the year ending February 1, 1915, improvements in the sum of $2,978.15 and for 1916 in the sum of $5,184.72 were made. In order to determine the fair cash value of appellant's property the figures for 1915 may be taken. The net income for that year was sufficient to pay 5 per cent. interest on the amount of outstanding bonds and a 7 per cent. dividend on a capital stock of $314,750.71, which gives a total reasonable investment value for that year of $934,750.71. This amount is not equal to the entire outstanding capital stock, but gives a fair basis for the valuation of the assets for the purposes of taxation, which should be assessed, not on the par value of the outstanding capital stock, but upon the actual value of the property as a whole.

Another way of demonstrating that the values fixed by the board of equalization are not unfair to appellant is to take the actual cost of construction of its property as it existed in 1915, to wit, $692,194 and, after allowing an annual interest of 7 per cent. thereon, which would amount to $48,453.58, and deducting this amount from the total net income of $53,032.55, a balance of $4,578.97 would remain, which would pay a 7 per cent. return on an additional value of $65,413.85, thus showing that the net income for the year in question would give a return of 7 per cent. upon a total value of $757,607.85. The amount thus ascertained is much less than the values reported to the Corporation Commission, and is less than for 1916, but is far in excess of the assessment for that year. A capitalization of the net income for 1916 will give some increase both in tangible and intangible values, and will show a value largely in excess of that fixed by the board of equalization. Accepting either the returns in the various reports made by appellant, or ascertaining the value of its property by a capitalization of its net income. the assessments appealed from are much less than the actual values of the property assessed.

The questions of law involved are identical with those in Re Assessment of the Oklahoma Gas & Electric Company, and upon the authority of that case, the orders appealed from are affirmed.

All the Justices concur.