[Civ. No. 6249.   Third Dist.—May 28, 1941.]

SOUTHERN CALIFORNIA TELEPHONE COMPANY (a Corporation), Appellant, v. COUNTY OF LOS ANGELES, Respondent.

[Civ. No. 6250.   Third Dist.—May 28, 1941.]

SOUTHERN CALIFORNIA TELEPHONE COMPANY (a Corporation), Appellant, v. CITY OF LOS ANGELES (a Municipal Corporation), Respondent.

Pillsbury, Madison & Sutro, Lawler, Felix & Hall, Alfred Sutro, Oscar Lawler and Francis N. Marshall for Appellant.

Ray L. Chesebro, City Attorney, Frederick Von Schrader and Leon Thomas David, Assistants City Attorney, Franklin W. Peck, Deputy City Attorney, John W. Holmes, Public Utilities Counsel, J. H. O'Connor, County Counsel, S. V. O. Prichard, Assistant County Counsel, Gordon Boller, Deputy County Counsel, Earl Warren, Attorney-General, John J. Dailey, Deputy Attorney-General, Henry C. Ramsey and Louis H. Burke for Respondents.

Roger John Traynor, Dixwell L. Pierce, George M. Johnson, F. Bert Fernhoff, City Attorney (Oakland), Dayton L. Ault, City Attorney (San Diego), Percy C. Heckendorf, District Attorney (Santa Barbara), John J. O'Toole, City Attorney (San Francisco), and Walter A. Dold, Chief Deputy City Attorney, as *Amici Curiae*, on Behalf of Respondents.

TUTTLE, J.—These actions were filed separately, but consolidated for trial and on appeal. In one, plaintiff seeks to recover the sum of $398,756.91, which amount was paid to the *City* of Los Angeles as taxes under an assessment levied by the State Board of Equalization. In the second, plaintiff seeks to recover, under a similar action, the sum of $909,-039.49 against the *County* of Los Angeles. At the close of plaintiff's case, and in each action, the trial court granted a nonsuit. The appeals are taken from judgments of dismissal thereafter entered.

The complaints in each case, so far as the statement of the cause of action is concerned, are substantially the same. They allege the corporate character of plaintiff, and state facts showing it to be a public utility, engaged in a general telephone and telegraph business in the State of California; that the State Board of Equalization assessed, in Los Angeles County, for the purposes of taxation, for the fiscal year ending June 30, 1936, certain property of plaintiff for the sum of $52,097,-585, of which amount the sum of $34,235,177 is claimed to be void. As to the City of Los Angeles the figures are $37,528,-530 and $24,587,483, respectively; that thereafter a petition for re-assessment of said property by said board was denied; that taxes in the amount above stated were paid under protest; that in making said assessments, said board acted *arbitrarily* and *capriciously* and in deliberate, wilful, and systematic disregard of assessments of other property in said county for said fiscal year, and of the method used in making of the same, and of the extent to which, and in the manner in which, other property in said county was taxed for said fiscal year; that said assessment bears no relation to the actual value of said property of plaintiff in said county; that said assessment is proportionately higher than assessments of other property of the same class or classes; that said assessment discriminates against plaintiff, and that it is ''con-

trary to, and in violation of the rights, privileges and immunities of plaintiff under Section 13 of Article I, and Section 14 of Article XIII of the Constitution of the State of California, and under the Fourteenth Amendment to the Constitution of the United States.''

From 1911 to 1934, inclusive, the property of public utilities was taxed in California by the imposition of taxes proportionate to gross receipts. On June 27, 1933, a constitutional amendment was adopted, whereby the aforesaid ''gross receipts'' system of taxation was superseded by the system now embraced in the Constitution, article XIII, sections 14 and 16 and the statutes implementing these constitutional provisions. This new system went into effect in 1935. The chief features of the new system of taxing public utilities in California are as follows: The State Board of Equalization is required to assess, annually, all property, other than franchises, of such enterprises at its actual value. The owners of public utility property are offered opportunity to appear and apply to the board for correction of assessments made by it. Upon completion of the assessments, the board is required to transmit to the respective local taxing jurisdictions an assessment roll showing the assessments against public utility property located therein. The property so assessed is then subject to taxation locally at the rates fixed for taxation of property in the respective taxing jurisdictions. In 1935 the board made its first assessment under the revised system. Appellant complains of the assessment so made of its property in the County of Los Angeles, alleging that the assessment is $34,235,177 too high on its property in the county, and $24,-587,483 too high on that part thereof located in the city.

The authority of the Board of Equalization for making the assessment is derived from article XIII, section 14 of the Constitution of the State of California, which provides, among other things, that the properties of public utilities shall be assessed annually by the State Board of Equalization *at the actual value of such property*. Said section also provides: That ''*all property so assessed shall be subject to taxation to the same extent, and in the same manner as other property*.''

We may start with the premise that the law contemplates that utility property and common property bear the same

burden of taxation in proportion to value. All parties agree that this is the correct rule in California.

As to the issues as they were defined at the trial, there was no attempt by plaintiff to prove the *actual values* of its properties. It therefore follows that the allegation of the complaint, based upon the fact that the assessment "bears no relation to actual value", may be disregarded. The following excerpt from the argument of counsel for appellant goes a long way toward clarifying and restricting the issues:

"Our whole complaint here, as has been repeatedly stated to your Honor, arises out of one of comparison. We claim that by a comparison of the assessment at which comparable properties would have been assessed, the State Board has assessed our properties at such figures as under the very decisions and opinions to which counsel has referred, raises a presumption of constructive fraud. . . . I think it has appeared that we are not here required to establish what the actual value was. Our problem has been by comparison to show an over-valuation, and I believe we have done that."

*Summing up the matter, it appears that the real question actually litigated was whether or not, by means of comparison, the property of appellant was assessed higher than other property of the same class or classes.*

It is urged by appellant that, having proven, in the action against the city, their property was assessed by the board for $37,528,250, whereas the city would have assessed it for $24,587,483 less, and as to the county, $52,097,585 and $34,235,177, respectively, the presumption arose that the assessment by the board was constructively fraudulent. It relies upon *Birch* v. *County of Orange*, 186 Cal. 736, 742 [200 Pac. 647]. There, the board of supervisors was charged with acting arbitrarily and fraudulently in respect to their act in fixing the assessed value of plaintiff's oil property. Plaintiff relied upon proof of assessments made upon surrounding oil lands almost identical in character, development, production and value. The undisputed evidence showed that plaintiff's land was assessed at a rate from ten to fifteen times that of such other surrounding properties. The court held that the facts made out a case, and that it was error to grant a nonsuit. The opinion states: "A grossly inequitable and palpably excessive over-valuation of property for taxation may be held constructively fraudulent." No California

cases are mentioned or cited, but several cases from other states are relied upon.     The rule in California upon this question is thus otherwise stated in the same volume:

"An assessment grossly disproportionate as compared with other assessments is an excessive assessment, since the final object of the assessment is to distribute the tax ratably on the various parcels of property subject to it, and an unequal assessment on one parcel as compared with others means that an excessive portion of the tax falls on that parcel. But the fact that an assessment is excessive, even though grossly so, does not itself make the assessment invalid. This is the rule generally followed in other jurisdictions and has been declared by at least three decisions of this court, namely, *Los Angeles* v. *Western etc. Co.,* 161 Cal. 204 [118 Pac. 720]; *Los Angeles etc. Co.* v. *County of Los Angeles,* 162 Cal. 164 [9 A. L. R. 1277, 121 Pac. 384]; *Miller & Lux* v. *Richardson,* 182 Cal. 115 [187 Pac. 411]. In the first of these cases, the finding of the trial court was, as here, that the assessment 'was grossly excessive', and it was held, nevertheless, that it was insufficient as a ground for invalidating the assessment." (*Pacific Coast S. S. Co.* v. *Richardson,* 186 Cal. 70 [198 Pac. 1034], at p. 72.)

The latter appears to be the well settled rule in this state. It may be observed, however, that in the Birch case the comparison was made between assessments made in the *same county* by the *same assessing agency.* In the instant case an attempt is made to make a comparison between the assessments of two distinct agencies—The State Board of Equalization and the County of Los Angeles (acting for the city, also), and in respect to different properties *owned by plaintiff.* The significance of this difference will be later pointed out.

The rule governing the right of appellant to bring an action of this character is stated in the case of *Los Angeles G. & E. Co.* v. *County of Los Angeles,* 162 Cal. 164–167–168 [121 Pac. 384, 9 A. L. R. 1277], as follows:

"It is not disputed that the conclusion of assessing officers as to the value of property for purposes of taxation, when honestly arrived at and when not made in pursuance of some fixed rule or general system the result of which is necessarily discriminatory and inequitable, is conclusive on the courts, however erroneous the conclusion of those officers may be. The law necessarily leaves the determination of the question

of fact of value to certain officers, and when it appoints tribunals for that purpose, as in this state primarily the assessor, and, for purpose of review, the Board of Supervisors acting as a county Board of Equalization, the conclusion of those tribunals on such a question of fact constitutes a judgment that is not collaterally assailable in the courts. This is the universal rule, and it has been so held in this State. (*San Jose Gas Co.* v. *January,* 57 Cal. 614; *Henne* v. *Los Angeles Co.,* 129 Cal. 297 [61 Pac. 1081]. See, also, Gray on Limitations of Taxing Power, sec. 1460 [31 C. C. A. 537].) As put in *Taylor* v. *Louisville etc. R. R. Co.,* 88 Fed. 350, such an attack will not lie in the courts 'where the injury complained of arises only from the erroneous but honest judgment of the lawfully constituted tax tribunal.' But it is likewise universally held that a taxpayer may so assail an assessment in the courts where it was 'fraudulently and corruptly made with the intention of discriminating against him, and for the purpose of causing him to pay more than his share of the public taxes,' and it has that effect, or where there is something equivalent to fraud in the making of the assessment, producing such effect. (See *County of Los Angeles* v. *Ballerino,* 99 Cal. 593 [32 Pac. 581, 34 Pac. 329]; *Pacific etc. Co.* v. *Dalton,* 119 Cal. 604 [51 Pac. 1072]; *Oregon etc. R. R. Co.* v. *Jackson Co.,* 38 Or. 589, 599 [64 Pac. 307, 65 Pac. 369] and cases there cited.) This is as true where the injurious effect so produced is caused by inequality of valuation as by any other cause, for, as said in Judson on Taxation, p. 608, 'it is obvious that where taxation is upon property that requires valuation, inequality of taxation is produced as surely by inequality of valuation as by inequality of the rate of tax.' "

A correct statement of the law is also found in the case of *Oregon & C. R. Co.* v. *Jackson County,* 38 Or. 589 [64 Pac. 307, 65 Pac. 369] (9 A. L. R., p. 1286):

" 'It must be conceded that assessors, in fixing valuations and making assessments, and Boards of Equalization sitting in review of their work, act in a judicial capacity, or in the exercise of a judicial function; and when the roll is made up it stands in the nature of a judgment. . . . Hence their findings and judgments are not subject to review or revision except in the manner pointed out by law, nor can they be

disturbed or annulled except when they proceed arbitrarily and in wilful disregard of the law intended for their guidance and control, with the evident purpose of imposing unequal burdens upon certain of the taxpayers. In the latter case, their acts being designedly oppressive and fraudulent, equity will interpose to prevent the consummation of such purpose, as there exists no adequate, certain, and complete remedy at law.' ''

In *Utah Const. Co.* v. *Richardson*, 187 Cal. 649–654–655 [203 Pac. 401], it is stated:

''It is a rule applicable to assessors and to boards having assessing powers that it is presumed that the assessing officers have properly performed the duties entrusted to them and, consequently, that their assessments are both regularly and correctly made. (Code Civ. Proc., sec. 1963, subd. 15; *Reclamation Dist.* v. *Wilcox*, 75 Cal. 443 [17 Pac. 241]; *In re Oklahoma G. & E. Co.*, (Okl.) [67 Okl. 301] 171 Pac. 26.) . . . At any rate, the State was not required to prove that the board did, in fact, base the tax upon the value of the franchise; the burden of showing the contrary rested upon appellant, and the only evidence adduced in this connection, namely, the testimony of the secretary of the board, was too indefinite and unsubstantial to overcome the presumption that the board had properly performed its official duties.''

In the latter case, as here, a nonsuit was granted in an action to recover taxes paid under protest, and it was held that ''the evidence was too indefinite and unsubstantial to overcome the presumption that the board (State Board of Equalization), had properly performed its official duties.'' That is the precise question presented upon this appeal, and we will direct our attention to the evidence produced by appellant, bearing in mind that:

''all the evidence in favor of plaintiffs must be taken as true, and all the evidence in conflict therewith must be disregarded. 'Every favorable inference fairly deducible and every favorable presumption fairly arising from the evidence produced must be considered as facts proved in favor' of the plaintiff and where the evidence is fairly susceptible of two constructions, or if either of several inferences may reasonably be made, the court must take the view most favorable to the plaintiff. If with all these aids the evidence is in such condition that a verdict or decision in favor of plaintiff

would be held by an appellate court to have sufficient legal support in the evidence, a nonsuit should not be granted." (*Birch* v. *County of Orange, supra*.)

At the outset it might be observed that, under its charter, the City of Los Angeles has adopted and uses the same system of assessing as the County of Los Angeles. Consequently, there is but one assessment for both, *in respect to property within the city limits*. The property here involved is situated both within and without the city.

■ The property assessed consists of buildings, which represent about fourteen per cent of the total; motor vehicles, which represent about three-tenths of one per cent; and other tangible personal property, representing about eighty-six per cent. The fiscal year for which this assessment was made was the *first year* which came under the operation of article XIII, section 14 of the Constitution, and the assessor consequently had no right or authority to assess said property for said year. It follows that there could be no legal assessment by the county for said year, and thereafter. The case of appellant, as it admits, rested upon the theory of *comparison* alone. In lieu of producing any legal assessment for the year appellant relied upon certain figures taken from the office of the assessor, and sought to use them to prove inequality of assessment. The source of these figures appears from the testimony of the deputy county assessor, which was substantially as follows:

"Q. You have had occasion to assess the property of the Southern California Telephone Company? A. We did prior to 1935, yes. Q. And in assessing the property of the Southern California Telephone Company will you state whether or not you pursued identically the same method and manner that you use in assessing the property of other individuals? A. Yes, we did. We assessed them on the same method and proceeded in the same way we did in assessing buildings of other kinds then in the county, owned by other people. Q. In your office there are certain records or certain things— I will say called map records and supporting building slips. Are those official records in your office? A. Yes. . . . A. That was for building slips. They show the method of arriving at the assessed value of the building. That is shown on the building slips and those building slips are in turn

copied into the assessor's map book. The Court: Then the information contained in the building slips is on the map books? A. The assessed value as shown on the building slip is copied on the map book; the assessor's map book shows the assessed value of that building on the map book. . . . Will you state, Mr. Potter, whether or not you continue to put figures on the building slips and records in your office, representing values on the properties of the Southern California Telephone Company? A. Yes, since 1934 we have continued our building slips and kept them up just like we have building slips generally, and they do reflect the value or the figures on the building slips just as though they were being assessed by the county. Q. Explain to the court why you do that? A. To keep our records up to date, although we realize we are not assessing the building we are keeping our records up to date so we will have a record of the buildings as they would be if we were doing the assessing. Q. You have done that every year since 1934? A. Yes, done that every year since 1934. . . . Q. Mr. Potter, in the assessment of public utility property for 1934 state what was the purpose and what was the liability to which such assessed values were subjected? A. We assessed the buildings, as I say, just like other buildings and they were entered on the map books and of course at that time there was no tax against the building but there were special assessments covering them. Q. No special assessments, levies, or things of that nature? A. They were assessed and the special assessment was extended against them, but not the regular taxes.''

The records mentioned by the witness, over the objection of respondents, were admitted in evidence. Upon them appellant bases the over-valuation of its property in the amounts we have heretofore indicated. It might be pointed out, however, that as to *tangible personal property* (other than motor vehicles), there were no records whatever in the assessor's office. Consequently, *that* property was not covered *directly* by the entries testified to by the witness mentioned. Such property consisted of special telephone apparatus, telephones, wires, cables, and similar articles. The figure at which the last mentioned property should have been assessed, according to the theory of appellant, is derived by a devious method which is, however, ultimately based upon the records testified to by the witness mentioned—that is, the building slips

and maps. Thus, it appears that the comparison upon which the entire case of appellant rests, is between the *actual assessment* by the Board of Equalization, and (1) as to *buildings,* the figures taken from said block books and maps which may be taken as the amounts for which the county would have assessed the property if it had the right to make a legal assessment for the year in question; (2) in respect to *motor vehicles,* values taken from a "blue book" in the office of the assessor, and which he was accustomed to follow in assessing such property, and which was published by a local automobile dealer; and, (3) in respect to *other tangible personal property,* by the application of a formula mentioned below, which is based, however, upon the values placed upon buildings as they appear in the block books and maps mentioned. The assessor testified that if he had assessed appellant's *buildings* in 1935, he would have assessed them at approximately $2,400,000. He did not testify as to the assessment he would have made in 1935 in respect to motor vehicles or any other property. Appellant's position as to asserted discriminatory assessment of appellant's tangible personal property other than vehicles may be summarized as follows: The building slips kept by the local assessor contain figures which appellant asserts are the values that would have been assigned by that officer to appellant's buildings in Los Angeles County, if he had been vested with the power of assessment thereof. The total of the building slip figures on appellant's buildings in Los Angeles County is divided by the total supposed replacement cost new less depreciation of those buildings, as calculated and estimated by appellant, and the quotient is found to be 27.4 per cent. On the theory, apparently, that replacement cost new less depreciation inheres in all property to the same extent and is a constant element of value in buildings and personal property, appellant calculates and estimates the supposed replacement cost new less depreciation of that part of its tangible personal property allocated by it to Los Angeles County, other than vehicles, and applies to it the per cent relation of building slip figures to supposed replacement cost new less depreciation of its buildings in Los Angeles County (27.4 per cent). The result is assumed to be the total maximum valid assessment of appellant's tangible personal property in Los Angeles County, other than vehicles, if personal property is assessed

at the same ratio of full value as are real estate and improvements. Asserting that personal property is assessed in California at only 33.33 per cent of full value, while real estate and improvements are assessed at 46.66 per cent thereof, appellant concludes that its personal property in Los Angeles County should be assessed at only that proportion of full value which 33.33 per cent bears to 46.66 per cent or 71.43 per cent. Accordingly, appellant applies to the supposed maximum assessment of its personalty, if personalty generally is assessed at the same "level" as real estate and improvements the factor of 71.43 per cent and derives what is asserted to be the maximum lawful assessment of its tangible personalty, other than vehicles, in Los Angeles County, or the figure $15,338,865. The difference between the figure so derived and the board's assessment of appellant's tangible personalty, other than vehicles, in Los Angeles County, $31,776,740, is the asserted fraudulent part of the assessment of appellant's tangible personal property other than motor vehicles. Motor vehicles represent 23 per cent of the total tangible taxable personalty in Los Angeles County. Following the above line of reasoning, appellant calculated and estimated the replacement cost less depreciation of its motor vehicles in Los Angeles County, and, applying the value figures in the "blue book", concludes that the asserted maximum allowable assessment of its vehicles is 19.42 per cent of their supposed replacement cost new less depreciation. From the foregoing it deduces that its tangible personal property cannot lawfully be assessed in excess of 71.43 per cent of 27.4 per cent of its replacement cost less depreciation.

We are of the opinion that the presumption in favor of the action of the board and the validity of the assessment could not be overcome by evidence of the character indicated. Appellant's case is predicated entirely upon a claim that the board's assessment was constructively fraudulent. In the case of *Miller & Lux, Inc.*, v. *Richardson*, 182 Cal. 115–128 [187 Pac. 411], it is stated:

"In order that there be fraud, there must exist, on the part of the assessing official, a conscious failure to exercise that fair and impartial judgment which the law requires of him. This is both the general rule and the settled law of the State."

There is no direct evidence of fraud, such contention being based solely upon an inference assertedly deducible from "comparative" assessed values of its buildings. This comparison is of the hypothetical, unequalized amounts the County Assessor *would have* assessed its property for *if* the law cast upon him the duty of making such an assessment, which it did not. Such a showing is predicated upon a highly conjectural and speculative "yardstick" theory of comparisons, and is too unsubstantial to sustain judgment in favor of appellant. In *Hannon* v. *Madden,* 214 Cal. 251–267–268 [5 Pac. (2d) 4], it is said:

"Fraud being a term which imputes venality and corruption to the person charged, should be clearly proved and satisfactorily established, especially where the persons charged are public officers vested with wide discretionary powers. If official acts may be explained on any reasonable theory of duty honestly, even though mistakenly performed, they must be resolved in favor of the presumption, which may not be lightly ignored. This is made doubly true where no substantial evidence, as in the instant case, points to a corrupt motive or dishonest purpose on the part of the accused. A wide divergence of views, especially in matters where local taxation for public improvements is involved, frequently exists. Suspicions easily aroused and baseless charges of dishonesty hurled in the acrimony of controversy have a tendency to defeat rather than promote efficiency in the administration of public affairs."

It must be remembered here that no attempt was made by appellant to show that the method adopted by the board in making the assessment was not that prescribed by law, nor is there any evidence from which it can be inferred that the board was guilty of a conscious failure to exercise that fair and impartial judgment which the law requires of it.

Another reason why the act of the board cannot be impeached by such evidence, (assuming that the entries in the block book and the maps were the equivalent of a valid assessment), is that under the constitutional provisions mentioned above, the power to assess public utility property is placed exclusively in the hands of the Board of Equalization as a sole, central assessing agency. This is significant, because it is the common function of central assessing agencies

to evaluate such property as a whole in order to assure the assessment of those values which cling to the entire property as a unit, and in order to assure the assessment of the same type of property at uniform value throughout the state. These are the reasons for central assessment of appellant's property as distinguished from local assessment thereof in all of the fifty-eight different counties. The law recognizes that where a central agency is given the duty to assess public utility property while other property is assessed by local officers, the very fact of such segregation bespeaks an intention that the central assessment might be different from the values of the local assessor. In *Columbus Southern Ry. Co.* v. *Wright,* (1894) 151 U. S. 470 [14 Sup. Ct. 396, 38 L. Ed. 238, 243] (quoting from the opinion in *Franklin Co.* v. *Nashville, C. & St. L. Ry.,* (Tenn.) 12 Lea, 521, 539):

" . . . 'No local estimate of the fraction in one county of a railroad track running through several counties can be based upon sufficient data to make it at all trustworthy, unless, indeed, the local assessors are furnished with the means of estimating the whole road.' "

In *Union Pacific R. R. Co.* v. *Ryan,* (1885) 113 U. S. 516 [5 Sup. Ct. 601, 28 L. Ed. 1098], the railroad corporation unsuccessfully attacked as discriminatory a unit assessment made by the State Board of Equalization of Wyoming and the allocation of values by that board to its property in Cheyenne claiming, as does appellant herein, that such method of assessment was unconstitutional in view of the method of local assessment of common property. The court explained the reason for central assessment of public utility property as follows (28 L. Ed. 1100–1101):

"The difficulty of assessing the value of railroad property in separate parcels, located in distinct cities and townships, is almost insuperable. A railroad cannot be regarded as mere land, like farm land or building lots; its value depends upon the whole line as a unit, to be used as a thoroughfare and means of transportation. A separate mile or two of its length is almost valueless by itself. . . . It seems hardly to admit of a doubt, that the object of this scheme was to withdraw the difficult task of assessing fractional parts of a railroad and its property from the hands of local assessors, who could hardly be expected to proceed upon any uniform plan,

and each of whom would naturally favor his own particular district.''

In *San Francisco etc. Railway Co.* v. *Scott,* (1904) 142 Cal. 222 [75 Pac. 575], the court was required to decide whether street railways fell within the category of ''all railroads operated in more than one county'', the property of which was required to be centrally assessed by the State Board of Equalization under California Constitution, article XIII, section 10, as that section then read. In discussing the reasons impelling to central assessment rather than local assessment of railroad property, this court said, at pages 225–226:

''The general rule with respect to the manner of ascertaining the value is declared in the section here involved to be, that all property shall be assessed by the local authorities of the place where it is situated. This general rule would suffice to give a uniform and just assessment of all ordinary property, but in considering the subject of property of railroads extending from one county into another, and operated as a whole, as was the case with the greater number of the railroads other than street railroads then in operation in the state, it is manifest from the debates that the convention perceived that this method would cause much inequality in the valuation of the same kind of property, having substantially the same value, and in the different counties, and would produce conflicts between the authorities of different counties concerning the exact location of the movable property described as rolling stock, on the day its liability to assessment accrued, and probably some double assessments of such property in the respective counties. These were the evils which the convention sought to remedy by the provision under consideration.''

A valid reason for assigning the physical property of public utilities to a state board for central assessment thus is recognized to be the need for avoiding the inequality which otherwise would mark the assessment of the same kind of property if the various local assessors were left to treat it the same as other property. Central assessment finds one of its chief merits in the uniformity of value which it assigns to like property wherever found. Central assessment insures that a mile of telephone wire in one county will receive the same assessment treatment as is accorded like property in all

other counties. Appellant's view of the law wholly negatives this important reason for central assessment of its property. It is the essence of appellant's case that the State Board of Equalization must assess a mile of telephone wire, or a telephone building in Los Angeles County, at the same value as that which the local assessor would assess it if given the opportunity. Appellant's contention means that a mile of wire or a building in Los Angeles County will be assessed at a different value than that at which similar property is assessed in any other county where the local assessor's opinion of the value of such property happens to differ from that of the Los Angeles County assessor. Thus, a primary reason for a single, central assessment of utility property is completely ignored, and appellant advocates the very result which central assessment seeks to avoid. It follows that the jurisdiction of the board being *state-wide,* any comparison, in proof of an over-assessment must be upon a similar basis. If the percentage of value applied by the board grossly exceeds the percentage of value for which common property throughout the state is assessed for purposes of general taxation, and if it were proved that the board acted wilfully and in disregard of the law, a cause of action would be made out. That would require *proof of the value* of the property of appellant. No such proof was offered here.

In concluding, we might observe that the case presents some very unusual features—that is—unusual in the sense that no cases called to our attention by either side, involve the question under consideration. In the first place, it is an attempt to invalidate an assessment upon the ground of constructive fraud, and in violation of the constitutional provision mentioned above, which requires such property to be assessed by the board at its "actual value", but no attempt is made to establish the *value* of the property of appellant. In the second place, the over-valuation is sought to be proven not through the comparison with assessments by the board of the properties of *others* similarly situated, but by other assessments (if it be conceded that they had the dignity and official character of assessments), made upon the identical properties of appellant by *another different and independent assessing agency.* The method of attack in this case is far different from that adopted in *Birch* v. *County of Orange, supra.* There, plaintiff, in proving excessive valua-

tion, introduced evidence of the assessment of the same assessor in the *same county,* covering the lands of several *other* oil companies. ■ Recovery here, therefore, cannot be had upon the theory of an unjust and wilful *discrimination* upon the part of the board. That could only be proven by a comparison of other assessments made by the *board itself,* upon property similarly situated. In order to be discrimination, there must be two acts relating to different parties, and they must be performed by the same taxing agency. If any recovery can be had, under the pleadings here, it must rest upon the contention that the board acted in violation of the constitutional provision quoted above, relating to equality of taxation. Both parties agree that the word "taxation", as there employed, includes "assessment". But plaintiff cannot single out an assessment made in *one county only* as a basis for comparison. It must prove that the assessment made by the board, of the property here involved, is based upon a percentage of value which grossly exceeds the percentage of value for which common property *throughout the state* is assessed for general purposes of taxation, by the counties thereof. This must necessarily follow, for the reason that the board has state-wide jurisdiction. The record shows that while counties vary in the percentage of value which each has applied, the ratio of value throughout the state is 46.66 per cent. Such proof was not offered here.

■ It is also contended by respondent city that the nonsuit was properly granted, for the reason that plaintiff did not allege or prove that it had presented the claim against the city in compliance with section 376 of its charter which reads as follows:

"No suit shall be brought on any claim for money or damages against the City of Los Angeles . . . until a demand for the same has been presented, as herein provided, and rejected in whole or in part."

In the case of *Brill* v. *County of Los Angeles,* 16 Cal. (2d) 726 [108 Pac. (2d) 443], this question was decided against the contention here made. That action was brought to recover taxes paid under protest to the county for the city. It was held that section 3819 of the Political Code, providing the procedure for the recovery of taxes paid under protest was controlling, and that said charter provision was not applicable, and that under said section of the Political Code the

presentation of a claim is not a prerequisite to the commencement of such an action.

Appellant having failed to produce any substantial evidence to sustain the allegations of its complaint, and having failed to prove that the State Board of Equalization, in making the assessment, acted arbitrarily and in wilful disregard of the law, it follows that the trial court properly granted respondent's motion for nonsuit in each action.

The judgments are affirmed.

Pullen, P. J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 24, 1941. Carter, J., and Traynor, J., did not participate therein.